Roland C. WEBB, David Miller, William Beasley, Vincent Jackson, on behalf of themselves and all others similarly situated

v.

WESTINGHOUSE ELECTRIC CORPORATION et al.

Civ. A. No. 76–172.

United States District Court, E. D. Pennsylvania.

Dec. 18, 1978.

Philip Stephen Fuoco, Philadelphia, Pa., for plaintiff.

Benson Zion, Bryn Mawr, Pa. and Albert C. Shapira, Pittsburgh, Pa., for Westinghouse Salary Emp. Assoc., Robert S. Forster, Jr., Asst. U.S. Atty., Philadelphia, Pa., Robert M. Landis, Philadelphia, Pa., for Westinghouse, Kirby, Cattabram, Wilson & Retterer.

Harry Lore, Philadelphia, Pa. and Robert Z. Lewis, New York City, for Local 107.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs in this class action employment discrimination action have filed several motions to compel discovery pursuant to Fed.

R.Civ.P. 37. Following a conference held in chambers for the purpose of discussing the discovery disputes which have arisen, we now issue this memorandum stating our disposition of the motions.

Defendant Westinghouse's objections to plaintiffs' discovery requests fall roughly into two major categories. First, Westinghouse objects to much of the discovery on the ground that the information requested consists of "self-critical analysis" of Westinghouse's employment policies and affirmative action programs, and that such material is therefore shielded from discovery under the reasoning adopted by this court in *Droughn v. FMC Corporation*, C.A. No. 75–3094 (November 11, 1977) and *Wehr v. Burroughs Corporation*, C.A. No. 76–587 (May 6, 1977). Second, Westinghouse objects to discovery which requests compilations where such compilations have not previously been prepared by Westinghouse for other purposes. Westinghouse contends that, by providing plaintiffs with the raw data necessary to make such compilations, it has complied with Fed.R.Civ.P. 33(c). We will discuss each of these objections separately and attempt to resolve them in principle prior to making rulings on specific interrogatories and document requests.

I. *Privilege of "Self-Critical" Analysis*

Several courts, including this court, have shielded from discovery certain subjective material constituting "self-critical analysis" of an employers' equal employment opportunity goals and policies. *See Droughn v. FMC, supra; Wehr v. Burroughs, supra; Dickerson v. United States Steel Corp.*, 13 E.P.D. ¶ 11,311 (E.D.Pa.1976) (*Dickerson II*); *Dickerson v. United States Steel Corp.*, 12 E.P.D. ¶ 11,095 (E.D.Pa.1976) (*Dickerson I*); *Sanday v. Carnegie-Mellon University*, 11 E.P.D. ¶ 10,659 (W.D.Pa.1975); *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283 (N.D. Ga.1971). The "self-critical analysis" defense to discovery has generally, but not always, been recognized in cases where the plaintiff has requested production of reports which are required to be filed with the Government, such as the EEO–1 Reports. Westinghouse would have this court expand the doctrine beyond the situations in which it has been applied in the past. Therefore, in connection with this motion, we are required to examine the source and extent of the defense raised by Westinghouse and to define some guidelines for determining the circumstances which would justify shielding from discovery items constituting "self-critical analysis."

The theoretical basis for the defense of "self-critical analysis" stems from the public policy which recognizes that voluntary compliance by employers with federal equal employment opportunity laws is essential for implementation of the policy of equal opportunity in employment. In furtherance of voluntary compliance, employers must be encouraged to be candid and forthright in assessing their employment practices and setting goals and timetables for eradicating policies deemed to be discriminatory in operation or effect. If subjective materials constituting "self-critical analysis" are subject to disclosure during discovery, this disclosure would tend to have a "chilling effect" on an employer's voluntary compliance with equal employment opportunity laws.

On the other hand, federal equal employment opportunity laws manifest a strong policy in favor of eradicating all vestiges of employment discrimination due to race, sex, or national origin. In furtherance of this policy, plaintiffs must be permitted to obtain information sufficient to enable them to prove employment discrimination where such discrimination exists. To the extent that the defense of "self-critical analysis" conflicts with a plaintiff's ability to gather information necessary to prove his or her case, the recognition of such a defense hampers the enforcement of federal equal employment laws.

In view of the strong countervailing policies extant here, we believe that it is necessary to limit carefully the situations in which "self-critical analysis" may be raised as a justification for resisting discovery. Carried to its logical extreme, such a privilege would foreclose discovery of material

434

which might be most strongly probative of discriminatory intent. In an attempt to define the boundaries of this defense, we examine the case law to see the circumstances where the defense was upheld.

In *Dickerson I, supra,* and *Sanday v. Carnegie-Mellon University, supra,* the courts upheld the employers' objections to production of Affirmative Action Plans submitted to the Government pursuant to Executive Order 11246. In *Droughn v. FMC Corp., supra,* this court extended the same reasoning to EEO–1 reports and exempted them from discovery. The major justification for excluding such material from discovery is that, in view of the fact that the filing of such reports is mandatory, the policy favoring equal opportunity in employment requires that employers be encouraged to be candid and complete in preparing such reports. As the *Dickerson I* court noted, "The quality of these documents depends to a great extent on the good faith of employers in evaluating their progress and establishing affirmative action goals. If these materials are subject to discovery and can be used by plaintiffs in Title VII suits, employers will not make candid evaluations and will attempt to set goals at minimum levels." *Dickerson I, supra.*

Several additional observations may be made about the *Dickerson I, Droughn,* and *Sanday* cases. In all of those cases, the objective information contained in the reports was available to plaintiffs through other discovery channels. The courts were clearly shielding only subjective evaluative material from discovery, presumably on the theory that the public policy argument favorable to employers would not apply with respect to objective data. *See Dickerson I, supra.* Additionally, so long as the objective date were otherwise made available to the plaintiffs, the denial of production of the reports themselves would not cause harm to the plaintiffs' case.

In *Dickerson I,* the court also denied plaintiffs' motion to compel production of materials compiled by United States Steel pursuant to a Consent Decree, to the extent that such documents contained "critical self-evaluation". The court reasoned that voluntary compliance was an important policy under the consent decree as well. We note that discovery was denied only after the relevant portions of the consent decree had been reviewed *in camera.*

Finally, in *Banks v. Lockheed-Georgia Co., supra,* and *Wehr v. Burroughs, supra,* subjective, evaluative materials prepared in the course of developing Governmental reports were shielded from discovery. However, special circumstances in each case suggest to us that this type of material may not always be precluded from discovery. In *Wehr,* the defendants were seeking an order compelling the return of material prepared by defendant's former employee which had been obtained by plaintiff outside of normal discovery channels. The material contained in these reports was clearly available to the plaintiff through normal discovery devices. In *Banks,* there was the additional problem that the materials sought were also protected as attorney's work product.

In reviewing all of the cases, several factors emerge as potential guideposts for the application of the "self-critical analysis" defense. First, materials protected have generally been those prepared for mandatory governmental reports. Second, only subjective, evaluative materials have been protected; objective data contained in those same reports in no case have been protected. Finally, courts have been sensitive to the need of the plaintiffs for such materials, and have denied discovery only where the policy favoring exclusion of the materials clearly outweighed plaintiff's need.

It is not possible to draw a bright line between those situations where disclosure of "self-critical analysis" should be compelled, and those where it should be shielded. However, it is not necessary to do so in this case, because the information requested by plaintiff's interrogatories and requests for production in the instant case clearly fall outside of any reasonable interpretation of this doctrine. For example, Interrogatory J requests that Westinghouse supply plaintiffs with the name and address

of any class member who has stated or complained to Westinghouse management that he or she was discriminated against on the basis of race. Westinghouse objects to this interrogatory, claiming that this information was received in the course of fulfilling its obligation to comply with equal employment laws. However, this material is objective in nature, and compelling disclosure of this information would in no way chill candid self-evaluation of employment practices. Similarly, Interrogatory Q requests information concerning every EEO training course attended by employees at Westinghouse's Lester facility. This is clearly objective data sought by plaintiff, and therefore, the defense of "self-critical" analysis cannot be applied.

■ Interrogatory Set L poses different problems, as it requests that Westinghouse identify by date, participant, and subject matter all meetings of Westinghouse personnel where the instant litigation or topics relating to affirmative action and racial discrimination at the Lester plant were discussed. Since these discussions do not relate to compliance with mandatory governmental reports, we believe that the defense of "self-critical analysis" cannot be asserted. Furthermore, the information requested in this interrogatory may be necessary in development of proof of intent to discriminate.[1]

■ Finally, plaintiffs have requested that we reconsider our ruling made by order dated October 20, 1978, denying plaintiff's motion to compel answers to Interrogatories and Document Requests-Set A, Nos. 1 through 7. These Interrogatories asked that defendant Westinghouse identify and produce all studies, whether statistical or otherwise, demonstrating or tending to demonstrate racial discrimination in any phase of employment at the Lester facility. This statistical and other objective information cannot fall within the "critical self-

analysis" exemption as defined in this memorandum. Furthermore, the fact that defendant has provided raw data necessary to prepare similar studies does not obviate the need for such discovery, since the very existence of such studies, coupled with a failure to remedy discriminatory conditions, may in itself demonstrate discriminatory intent. Therefore, we believe that these discovery requests must be complied with.

## II. Compilations not Previously Prepared

■ Westinghouse has objected to several other requests for compilations of information on the grounds that they have made documents available to plaintiffs which are necessary to make these compilations. Westinghouse assures us that in these cases, where no compilation has been previously prepared, it is no greater burden for the plaintiff to compile the information than it would be for Westinghouse. See Affidavit of Perry R. Watkins; Fed.R.Civ.P. 33(c). Plaintiffs concede that the information they need may be obtained from the documents provided; their objection, however, is that under the current time restraints for trial preparation, it is almost impossible for plaintiffs to prepare adequately without the benefit of the compilations prepared by Westinghouse. Plaintiffs also argue that, since the manner in which Westinghouse has kept its records has made it difficult for the parties to compile the needed information, that Westinghouse should bear the burden of preparing the compilations. See Kozlowski v. Sears, 73 F.R.D. 73 (D.Mass. 1976).

In Kozlowski, the defendant in a products liability case had maintained no separate records of complaints made with regard to specific products; instead, the only records kept were alphabetical lists of the names of all persons who had made complaints about any product. The defendant claimed that it

---

1. With respect to Interrogatory L, defendant also raises the claim that this information is protected by attorney-client privilege or that it is protected as trial preparation material. However, defendant has not provided us with further information so that we may evaluate

these claims of privilege. We therefore must conclude that this information is discoverable. Defendant may, of course, submit to us further information concerning the claims of privilege in the form of a Motion for a Protective Order.

**436**

was therefore unable to provide the plaintiffs with a list of names of persons who had complained about a specific product. The court rejected defendant's plea and concluded that the cost of locating the requested objects should be born by defendant "where the costliness of the discovery procedure involved is entirely a product of the defendant's self-serving indexing scheme over which the plaintiff has no control." *Id.* at 77.

*Kozlowski* involved a fact situation where the failure to keep more readily usable business records approached the level of willful disregard for the interests of the public. This is not such a case. The information requested by the plaintiffs can be obtained from the records that defendant has made available. In effect, plaintiffs are asking us to shift the cost of preparing this case for trial to defendant, and we decline to do so absent a showing of willfulness or other egregious circumstances rising to the level shown in *Kozlowski*.

In view of the fact that we have continued the date for trial, thus giving the plaintiffs additional time to prepare their own compilations, we decline to order Westinghouse to provide the information requested. We do emphasize, however, that it is Westinghouse's duty to give plaintiffs all the guidance they need in order to interpret and understand the raw data supplied to them.

■■ Finally, plaintiffs have moved to compel responses to Requests for Admission, Set A. Westinghouse declined to admit or deny the truth of such statements on the ground that this information has not been previously compiled. These requests; however, require only simple computations, and this information is certainly "readily obtainable" to Westinghouse. *See* Fed.R. Civ.P. 36(a). Under the circumstances, it is not an adequate response for Westinghouse to merely state that such information is as readily available to the plaintiffs as it is to Westinghouse. The purpose of requests for admissions is not necessarily to obtain information, but to narrow the issues for trial. Therefore, we conclude that plaintiffs' motion should be granted.