Nancy **RESNICK, et al., etc., Plaintiffs,**

v.

**AMERICAN DENTAL ASSOCIATION, Defendant.**

**No. 79 C 3785.**

United States District Court, N. D. Illinois, E. D.

Aug. 18, 1982.

On Motion for Reconsideration Oct. 14, 1982.

Bridget Arimond, Davis, Miner, Barnhill & Galland, Chicago, Ill., for plaintiffs.

Peter M. Sfikas, Larry R. Eaton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Nancy Resnick ("Resnick") sued American Dental Association ("ADA") on her behalf and as a representative of all women similarly situated, charging ADA has engaged in a series of employment practices discriminating unlawfully against women. Resnick has filed motions seeking:

    1.  a Fed. R. Civ. P. ("Rule") 37 motion to compel certain discovery;  and

2. an order barring communications between ADA's counsel and members of the plaintiff class, with certain limitations.

Both motions are granted.

### Motion To Compel

On April 7, 1982 Resnick served on ADA a third set of interrogatories, a third request for production of documents and a second notice of deposition under Rule 30(b)(6). On June 4 ADA responded, objecting in large part on the grounds of privilege. After compliance with this District Court's General Rule 12(d) Resnick filed its motion to compel June 8.

Resnick asks to compel discovery in two areas of activity undertaken by ADA after this action was filed:[1]

1. In the summer of 1980 ADA retained the management consulting firm of Booz, Allen & Hamilton, Inc. ("Booz, Allen") to perform a "personnel practices study." That study was ultimately completed in the fall of 1981. Resnick seeks a copy of the study as well as information as to the work performed by Booz, Allen and the steps ADA has taken in response to the study.

2. In the spring of 1980 ADA's executive director, Dr. John M. Coady, created an Ad Hoc Liaison Committee on Employee Relations (the "Committee"). It has met regularly and has prepared minutes of its meetings and other memoranda and documents regarding its activities. Resnick seeks the minutes, memoranda and documents.

Both the Booz, Allen study and the Committee's creation were undertaken by ADA "with the advice and assistance" of counsel. ADA management has considered and in some cases implemented the suggestions of both Booz, Allen and the Committee.

Perhaps ADA's most serious argument is that the Booz, Allen and Committee documents are protected by the "critical self-analysis" privilege developed in cases like *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283 (N.D. Ga. 1971) and adopted to varying degrees by other courts. *See O'Connor v. Chrysler Corp.*, 86 F.R.D. 211 (D. Mass. 1980); *Webb v. Westinghouse Electric Corp.*, 81 F.R.D. 431 (E.D. Pa. 1978); *but see Ligon v. Frito-Lay, Inc.*, 82 F.R.D. 42 (N.D. Tex. 1978).

For current purposes this Court need not decide whether to embrace that concept. When it *has* been adopted, the courts have consistently[2] applied these standards:

1. To be privileged, the materials must have been prepared for mandatory government reports.

2. Any privilege extends only to subjective, evaluative materials.

3. It does not extend to objective data in the same reports.

4. Discovery has been denied only where the policy favoring exclusion has clearly outweighed plaintiffs' need.

*O'Connor*, 86 F.R.D. at 217; *Webb*, 81 F.R.D. at 434.

■ ADA makes no claim the work of Booz, Allen or the Committee in any way involved government-required reports. ADA alone chose to undertake the activities, and no governmental benefit—as in cases like *Banks, O'Connor* and *Webb*—was contingent on making the reports. This Court does not accept ADA's invitation thus to extend the "self-critical analysis" privilege, which rests on the strong public policies (*O'Connor*, 86 F.R.D. at 218):

to assure fairness to persons who have been required by law to engage in self-evaluation ... and to make the self-eval-

---

1. There has been neither an evidentiary hearing nor an *in camera* submission of documents on this motion. All factual recitals have been drawn from, and all factual inferences have been indulged in favor of, ADA (the party asserting the privileges).

2. *Banks* may perhaps be viewed as an exception, because it did not indulge in the same

analysis. But in that case as well as the others, the study findings were used for the direct purpose of responding to governmental affirmative action requirements. To the extent if any *Banks* would support a broader privilege than such cases as *O'Connor* and *Webb*, this Court declines to follow suit.

uation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation.

Neither that fairness rationale nor that effective enforcement rationale operates here. No unfairness exists, for no third party required ADA to make a critical self-evaluation or, indeed, any evaluation at all. Nor is any enforcement scheme—like that under Executive Order 11246—implicated by voluntary private decisions to undertake self-analysis. Accordingly the "self-critical analysis" privilege, if it is to be recognized at all, is not applicable to ADA.

ADA also invokes the work-product doctrine and the attorney-client privilege to shield the Booz, Allen and Committee work from discovery. Neither is available for that purpose.

[2] First the work product doctrine, and the related exception for experts' work not to be used at trial, are not applicable because the work was not prepared "in anticipation of litigation or for trial" within the meaning of Rules 26(b)(3) and (b)(4). As ADA recognizes, 8 Wright & Miller, *Federal Practice & Procedure* § 2024, at 198 states the relevant test:

> whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

However ADA misapplies that test. It offers nothing to counter Resnick's claim (supported by ADA's own documents) that both the Booz, Allen study and the Committee were initiated for reasons having to do with ADA's overall business rather than in preparation for this or any other lawsuit. Indeed, the work of both Booz, Allen and the Committee clearly involves personnel matters of all sorts rather than being litigation-oriented.[3]

*Rodgers v. United States Steel Corp.,* 11 E.P.D. ¶ 10,666 (W.D. Pa. 1975) is not to the contrary. *Rodgers* involved validation studies undertaken by U.S. Steel before it had yet been sued, but when it had the expectation Title VII suits would soon be filed. Given the crucial role played by such studies in Title VII disparate impact cases—they are often the entire case the employer offers in rebuttal—it is wholly appropriate to characterize preparation of such a study as in "anticipation of litigation."

That analysis will not insulate the broadranging studies here, taking in the entire scope of ADA's personnel practices. ADA has not carried its burden of demonstrating that the studies were prepared in anticipation of litigation or for trial.

ADA's objection to discovery on attorney-client privilege grounds is also asserted without real support for that proposition. It is of course not enough that the work "was initiated with advice of counsel, and counsel for ADA was kept advised of the activities as they progressed" (ADA R. Mem. 11 n. 3). As already indicated, the work was essentially management-oriented for ADA's overall business purposes, so that the lawyer-client relationship was no more than tangential to the studies. Simply to posit ADA's sweeping notion as a "standard" for the scope of the privilege is to reject it in light of all the authorities and the rationale underlying the privilege.

ADA also argues discovery is prohibited by Rule 26(b)(1) because evidence of subsequent precautionary measures is not admissible at trial under Fed. R. Evid. 407. This Court need not deal with the applicability of the latter Rule, for Resnick has pointed

---

**3.** ADA's R. Mem. 7 effectively acknowledges this, but makes the unsupported statements that:

> 1. To the extent Booz, Allen's activities concerned matters pertinent to this lawsuit, materials generated were "prepared in anticipation of litigation" and are hence work product.
>
> 2. To the extent they did not, materials generated are not calculated to lead to admissi-

ble evidence and are therefore not discoverable.

That effort to construct a neat dilemma is belied by ADA's own contemporaneous descriptions of the Booz, Allen functions (in documents attached as exhibits to the Resnick Memorandum). ADA's argument will not wash.

to at least one issue that such measures might be admissible to prove in any case: whether Resnick is a prevailing party under Title VII and thus entitled to attorneys' fees. Moreover ADA's current personnel practices, which appear to be at the heart of the sought-after discovery, might well lead to the discovery of other admissible evidence.

In sum, ADA has advanced a congeries of arguments that do not in the aggregate add up to one solid one. Resnick's motion to compel discovery must be granted.

### Motion for Protective Order

■ Resnick asks to bar communications between ADA's counsel and plaintiff class members concerning this litigation. Resnick's position may be simply stated:

1. Once the court has certified a class, all the members of the class are represented by plaintiffs' lawyers.

2. DR 7–104 of the Code of ·Professional Responsibility provides in relevant part:

> (a) During the course of his representation of a client a lawyer shall not (1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so . . . .

ADA counters with three arguments:

1. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) proscribes such an order absent a clear showing of abuse, which is lacking here.

2. There is no lawyer-client relationship between plaintiffs' counsel and un-

named class members, so that DR 7–104 does not come into play.

3. Defendants' counsel should be able to communicate with class members to assist in preparing for trial.

Again none of·its contentions is persuasive.

As for *Gulf Oil,* the Supreme Court there held a blanket order against communications between class members and *class* counsel[4] interfered with the latter's ability to represent the class and was therefore inimical to the purposes of Rule 23. Those same principles obviously do not apply to protect communications to class members by *opposing* counsel. Moreover, as to the freedom of expression consideration that might have served as an alternate ground for invalidating the *Gulf Oil* rule,[5] the Supreme Court (452 U.S. at 104 n. 21, 101 S.Ct. at 2202 n. 21) made it plain that the First Amendment does not shelter contacts by an adversary's lawyer:

> We also note that the rules of ethics properly impose restraints on some forms of expression. See, *e.g.,* ABA Code of Professional Responsibility, DR 7–104 (1980).

ADA's claim that no lawyer-client relationship exists here fares no better. It ignores the specific language of DR 7–104, which refers to "a party [the adversary's lawyer] knows *to be represented by a lawyer.* " Without question the unnamed class members, once the class has been certified,[6] are "represented by" the class counsel. Class counsel have the fiduciary responsibility and all the other hallmarks of a lawyer representing a client. *Amos v. Board of Directors of City of Milwaukee,* 408 F.Supp. 765, 774–75 (E.D. Wis. 1976), *aff'd sub nom. Armstrong v. Brennan,* 539 F.2d 625 (7th Cir. 1976) (issue·not discussed on appeal),

---

**4.** In addition the order in *Gulf Oil* barred communications between named plaintiffs and class members. Though no lawyer-client relationships were necessarily implicated by that restriction, similar .Rule 23 considerations invalidated such a blanket prohibition as well.

**5.** First Amendment principles, prohibiting prior restraints on expression, were relied on by the en banc majority of Fifth Circuit judges in *Gulf Oil,* 619 F.2d 459, 466–78 (5th Cir. 1980). Be-

cause the Supreme Court's unanimous opinion found the District Order exceeded its authority under Rule 23, the Court did not reach the constitutional issue.

**6.** *Before* certification DR 7–104 does not apply because the potential class members are not yet "represented by" counsel. See this Court's opinion in *Cada v. Costa Line, Inc.,* 93 F.R.D. 95, 98 (N.D. Ill. 1981).

*vacated and remanded on other grounds,* 433 U.S. 672, 97 S.Ct. 2907, 53 L.Ed.2d 1044 (1977); *Cullen v. New York State Civil Service Comm'n,* 435 F.Supp. 546, 560 (E.D. N.Y. 1977), *aff'd,* 566 F.2d 846 (2d Cir. 1977); *Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 832 (3d Cir. 1973); *Smith v. Josten's American Yearbook Co.,* 78 F.R.D. 154, 163 (D. Kan. 1978), *aff'd,* 624 F.2d 125 (10th Cir. 1980) (issue not discussed on appeal); 2 Newberg, *Class Actions* § 2730b, at 1215 (1977). ADA's contention that the lawyer-client relationship is lacking because it did not arise through the initiative of the class members is supported neither by the cases it cites nor—more importantly—by DR 7–104 itself (or by the purposes underlying the DR).

Finally the rationalization based on ADA's counsel's need to prepare for trial is wholly without merit. It proves too much. *Every* case should be prepared in part by the lawyer's communicating with the opposing party. That is after all what much of the mechanism of discovery is designed for. But it is of course unethical for those communications to take place directly without the involvement of the opposing party's lawyer. To the limited extent that certain of ADA's employees (for example the Director of Personnel, who is female) must legitimately be communicated with for trial preparation, ADA's counsel has the burden of identifying such employees and the reasons for excepting them from the restriction.

It is hardly necessary to spell out the reasons for the prohibition of a lawyer's direct dealing with an adverse party represented by counsel. All those reasons apply here with full vigor. And to the extent communications with class members (who are after all employees of counsel's client) are necessary for ADA's non-litigation-oriented business matters, such communications will not of course be inhibited by this Court. As stated in 2 Newberg, *Class Actions* § 2730(d), at 1220 (1977):

7. For this purpose each member of the law firm to which ADA's record counsel belongs shall be

After a court has certified a case as a class action and the time for exclusions has expired, the attorney for the class representative represents all class members who are otherwise unrepresented by counsel. Defense counsel must observe the rules of ethical conduct in these circumstances and communicate with the opposing parties through their attorney, who is counsel for the class. . . .

The court may allow the defendant to communicate with actual class members in the ordinary course of business, so long as the communications do not relate to the claims involved in the litigation.

■ Ordinarily this Court would deem it unnecessary to do more than remind counsel of their ethical responsibilities. Here however ADA's counsel has taken the position he was not obliged either to refrain from communications or to advise class counsel whether he had communicated with class members in the past. Accordingly Resnick is entitled to the order requested in the motion.

### Conclusion

Resnick's motion to compel discovery is granted. ADA is ordered to comply with all open requests on or before August 30, 1982. As for Resnick's other motion, each of ADA's counsel[7] is ordered:

1. not to communicate, or to cause others to communicate, with any member of the plaintiff class with respect to the subject matter of this litigation, except with the prior consent of class counsel or this Court;

2. on or before August 30, 1982:

(a) to advise class counsel whether, since the class was certified, any such communications have taken place; and

(b) to deliver to class counsel for examination and copying all documents (including notes or memoranda) constituting or referring to any such communication to or from any class member.

included in the term "ADA's counsel."

From time to time hereafter ADA's counsel may move for the exclusion of specific class members (such as ADA's Director of Personnel) from the scope of this order, coupling such motion with a statement of the reasons for such exclusion. Class counsel may include in their response to such motion any proposed appropriate limitations on such exclusion. In addition, if any prior communications have been disclosed in response to Paragraph 2 of this order, class counsel may move for appropriate relief as to the use of such communications in this litigation.

## ON MOTION FOR RECONSIDERATION

This Court's August 18, 1982 memorandum opinion and order (the "Opinion") granted two motions by plaintiff class representative Nancy Resnick: one to compel certain discovery, and the other to forbid communications from counsel for American Dental Association ("ADA") to members of the class without the prior consent of class counsel or this Court. ADA has moved alternatively for (1) reconsideration of the Opinion or (2) certification under 28 U.S.C. § 1292(b) ("Section 1292(b)") for an interlocutory appeal. For reasons stated in this memorandum opinion and order, ADA's motion is denied in its entirely.

### Motion To Reconsider

1. *Production Order*

Disclosure compelled by the Opinion encompassed (1) a "personnel practices study" by management consultants Booz, Allen & Hamilton, Inc. and (2) the activities of ADA's Ad Hoc Liaison Committee on Employee Relations. ADA's current motion simply renews its arguments supporting application of the so-called "critical self-analysis" privilege to those documents—arguments fully considered and rejected in the Opinion. Just as ADA apparently sees no need to do anything other than thresh old straw, this Court will do no more than refer to its analysis at 95 F.R.D. at 374–76.

2. *Protective Order*

As for the protective order covering litigation-related communications between ADA's counsel and plaintiff class members, once again ADA largely rehashes contentions already disposed of in the Opinion. To that extent no further discussion is required.

However ADA poses a few arguments that merit a brief added look:

1. Courts should not enforce any aspect of the Code of Professional Responsibility (the "Code"), including DR 7–104, in litigation.

2. Some language in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) confirms its applicability to orders limiting communication between *any* party's counsel and class members.

3. Fiduciary obligations of class counsel to class members are insufficient to give rise to an attorney-client relationship, because "class counsel are generally *not* obligated to produce class members for depositions based upon notice or to otherwise respond to discovery on class members' behalf" (ADA Mem. 10–11, emphasis in original).

4. ADA's non-abusive communications with class members after class certification but before the Opinion should be exempt from discovery under the attorney-client privilege and the work-product doctrine.

After analysis, though, none of those variations on ADA's original theme changes the result.

ADA's first argument is simply untenable. Courts consistently employ provisions of the Code as sources of procedural and substantive law (see most recently, in our Court of Appeals, *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (1982)). This Court declines ADA's invitation to depart from that established practice by ignoring the direct thrust of DR 7–104.

ADA's effort to reshape *Gulf Oil* to its own ends similarly borders on the frivolous. As the Supreme Court itself put it (452 U.S. at 99, 101 S.Ct. at 2199, emphasis added):

[I]n this case we first consider[1] the authority of district courts under the Federal Rules to impose sweeping limitations on communications by named plaintiffs and *their counsel* to *prospective* class members.

ADA cannot lift language from *Gulf Oil* out of context to insulate communications from *its* counsel to *actual* class members. Indeed, even were *Gulf Oil* applicable to the latter situation (as it is not), this case has already exhibited the potential for abuse by ADA's counsel that would support a *Gulf Oil*-approved protective order.[2]

Nor can ADA draw support from its assertion that "class counsel are generally not obligated to produce class members for depositions based upon notice." As the cases cited by ADA illustrate, the limitations on discovery responsibilities imposed on unnamed class members derive not from the absence of an attorney-client relationship but rather from the status of those unnamed persons as "absent" parties.

■ Finally, this Court reaffirms the remedial portion of its protective order, which requires disclosure of all post-certification communications between ADA counsel and class members. ADA cannot invoke the work-product doctrine as an automatic mantle shielding its counsel from disclosure responsibility. That doctrine was simply not designed to immunize materials obtained through improper trial preparation activities.[3] And it is frankly absurd for ADA to call on *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) to support a claimed attorney-client privilege for communications between corporate attorneys and employees *who have*

sued *their corporate employer*—the only real client of those attorneys.

In sum, ADA has offered no sound reason for reconsideration of the Opinion. Its motion in that respect will be denied.

*Motion for Section 1292(b) Certification*

Three factors must coincide to justify a Section 1292(b) certification for immediate appeal:

(1) the interlocutory order must involve a controlling question of law;

(2) there must be substantial ground for difference of opinion; and

(3) the district judge must be of the opinion that immediate appeal from the order may materially advance the ultimate termination of the litigation.

As the Supreme Court said in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474, 475, 98 S.Ct. 2454, 2460, 2461, 57 L.Ed.2d 351 (1978):

Congress carefully confined the availability of such reviews. . . . Finally, even if the district judge certifies the order under § 1292(b), the appellant still "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (CA 7, 1972).

■ Not one, let alone all three, of the Section 1292(b) factors is satisfied by this Court's ruling that the "critical self analysis" privilege—if it is to be recognized at all—extends only to materials prepared for

---

**1.** Such "first" consideration of the stated question was contrasted by the Court with reaching any constitutional ground that would support the lower court's decision. As it turned out, the first question was the only one the Court had to (and did) decide.

**2.** ADA's counsel has openly disavowed any obligation to refrain from communications (and in fact has already acknowledged past communications with class members). *Gulf Oil* calls on the trial court to weigh "potential abuses" (452 U.S. at 102, 101 S.Ct. at 2201) against "potential interference with the rights of the parties"

(*id.* at 101, 101 S.Ct. at 2200). That balancing process would clearly favor a protective order here, particularly where this Court has invited requests by ADA for any appropriate limitations justified by the employer-employee relationships involved (95 F.R.D. at 377–78).

**3.** If ADA wishes (as its motion indicates) to submit such prior communications for in camera review, this Court will determine whether the work product doctrine—properly limited and applied—requires the redacting or withholding of any such documents.

mandatory government reports. First, it is wholly inaccurate to call that privilege issue a "controlling question of law," for its resolution will not significantly influence the course of this litigation and will not yield any measurable time savings. *See* 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3930, at 159–60 (1977). Second, the existence of a single district court decision (the *Banks* case) supporting ADA's position, alone among the several cases that acknowledge this recent addition to the privilege ranks at all, does not establish a "substantial ground for difference of opinion." Finally, an immediate appeal will not materially advance the ultimate termination of the litigation. Of course the appeal would delay proceedings in the case; and conversely, if the case went ahead and the Court of Appeals found the Opinion erroneous on an ADA appeal from an adverse final judgment, the harmless error test would make a new trial unlikely indeed.[4]

ADA's request for certification of this Court's protective order is also without merit. First, that order was entered pursuant to this Court's broad supervisory powers under Fed. R. Civ. P. 23(d). As such, it is "grounded in the discretionary power of the district court," *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 862–63 (3d Cir. 1977), and therefore does not involve a controlling issue of law. Second, ADA has pointed to no authority—save its inaccurate invocation of *Gulf Oil*—that would establish a "substantial ground for difference of opinion." Lastly, certification of the order would not expedite disposition of the case. As this Court has already pointed out, ADA can resort to various legitimate discovery mechanisms to obtain in-

formation from class members, and the order itself contemplates court approval for appropriate direct communications where required for business purposes or trial preparation.

Under Section 1292(b) one strike is out for the party seeking certification. ADA has fanned on all three criteria as to both issues it wants certified.

### Conclusion

ADA's alternative motion for reconsideration and for certification under Section 1292(b) is denied in full.

---

4. ADA cites several cases in which issues of privilege have been certified under Section 1292(b). Some of those indulged no analysis of the statutory standards at all. Others, like *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), and *Commonwealth Edison v. Allis-Chalmers Mfg. Co.*, 335 F.2d 203 (7th Cir. 1964), were motivated by important considerations that satisfied the Section 1292(b) criteria but are entirely absent here. And there are of course an equally large number of more nearly

comparable cases that have refused to certify discovery issues for immediate appeal. *See, e. g., United States v. Salter*, 421 F.2d 1393 (1st Cir. 1970) (acknowledging the force of our Court of Appeals' decision in *Commonwealth Edison* where an ultimate question of law in the case was posed by the pre-trial disclosure order—not true in *Salter* or here); *United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959); *SEC v. Canadian Javelin Limited*, 451 F.Supp. 594, 598 (D. D.C. 1978).