**Phyllis Wilson HOFFMAN, Plaintiff,**

**and**

**Equal Employment Opportunity Commission, Plaintiff–Intervenor**

**v.**

**UNITED TELECOMMUNICATIONS, INC., et al., Defendants.**

**Civ. A. No. 76–223–C2.**

United States District Court,
D. Kansas.

May 26, 1987.

See also 117 F.R.D. 436.

Karen A. Plax, Kansas City, Mo., David J. Waxse, Overland Park, Kan., for plaintiff.

Edward Boddington, Jr., Kansas City, Kan., Gerald S. Hartman, Washington, D.C., John J. Cassidy, Jr., James S. Petrie, Michael G. Cleveland, Chicago, Ill., Richard J. Croker, Westwood, Kan., for defendants.

Amanda S. Meers, Asst. U.S. Atty., Kansas City, Kan., James R. Neely, Jr., Gretchen D. Huston, Robert G. Johnson, St. Louis, Mo., for plaintiff-intervenor.

**442**

## MEMORANDUM AND ORDER

GERALD L. RUSHFELT, United States Magistrate.

This matter is before the court on Plaintiff and Plaintiff–Intervenor's Motion to Compel (doc. 748) and Defendants' Motion to Compel Plaintiff–Intervenor to Respond to Certain of Defendants' "Interrogatories Regarding Communications With Potential Claimants—First Set" (doc. 779).

### Plaintiff and Plaintiff–Intervenor's Motion to Compel (doc. 748)

Pursuant to Fed.R.Civ.P. 37(a), plaintiff and plaintiff-intervenor request the court overrule defendant's "self-evaluation" privilege objection to certain questions asked to William M. Washington and Edwin Swartz at their depositions. They also move for a court order compelling these deponents to fully answer such questions and any related follow-up questions. Mr. Washington is defendant United Telecom's director of compensation and employee benefits. Plaintiff and plaintiff-intervenor asked for his conclusions, regarding defendants' need for females in upper level management, upon reviewing defendants' EEO–1 report and government statistics. Questions to Mr. Swartz inquired about a "statistical analysis" he had performed, regarding the compensation of defendants' work force. Defendants object to these questions as violating their "self-evaluation" privilege.

The "self-evaluation" or "self-critical analysis" privilege has been used by many courts to shield from discovery, subjective materials constituting the critical analysis of an employer. This court has already protected defendants' affirmative action plans from discovery in this action pursuant to this privilege. However, the court did not protect from discovery any objective data in the reports. Courts which use the "self-critical analysis" privilege, usually follow the following guidelines:

(1) [M]aterials protected have generally been those prepared for mandatory governmental reports; (2) only subjective, evaluative materials have been protected; (3) objective data in those same reports have not been protected; and (4) in sensitivity to plaintiffs' need for such materi-

als, courts have denied discovery only where the policy favoring exclusion has clearly out-weighed plaintiffs' need.

*O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 217 (D.Mass.1980). *See also Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 434 (E.D.Pa.1978). More recently, some courts have narrowed the privilege to include only those materials which a party is required to file with the government. *See, e.g., Roberts v. Carrier Corp.*, 107 F.R.D. 678 (N.D.Ind.1985).

In considering whether or not the "self-evaluation" privilege applies to defendants' discovery objections in this motion, it is important to keep in mind the policy behind the privilege—to encourage voluntary compliance by employers with the federal equal employment opportunity laws. Disclosure of subjective "self-evaluative" information would have a chilling effect on an employer's voluntary compliance with the laws. On the other hand, these laws clearly reflect a public policy to eliminate prohibited employment discrimination.

■ Does the "self-evaluation" privilege apply to the questions asked of Mr. Washington during his deposition? They sought his evaluation or opinion, concerning defendant's need for women in upper level management. This opinion was to be based on an EEO–1 report and certain government statistics which Mr. Washington had viewed. Defendants do not cite to any authority supporting their position that a deposition question seeking the opinion of an affirmative action officer should be protected by the "self-evaluation" privilege. Clearly, the evaluative portions of the EEO–1 report are protected from discovery. *See Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 433 (E.D.Pa.1978). However, the court shall refrain from extending protection to Mr. Washington's deposition answer. Mr. Washington was queried regarding his own opinion. He was not asked to state the content of the EEO–1 report. Defendants have not alleged that Mr. Washington's opinion is embodied in any material or report. Although his opinion may be subjective and evalu-

ative, it does not necessarily constitute or equate with the opinion of defendants in "self evaluation." Therefore, the court grants plaintiff and plaintiff-intervenor's motion to compel Mr. Washington to answer the questions asked at his deposition.

The motion to compel is premature to the extent it asks for an order to require Mr. Washington to answer related follow-up questions. Plaintiff and plaintiff-intervenor may pursue a reasonable inquiry into the opinion of the witness. The court will not at this time enter an order that he must answer questions, when the motion is directed to no specific question.

■ In the deposition of Edwin Swartz plaintiff and plaintiff-intervenor asked questions about an "analysis" he performed for defendants. Plaintiff and plaintiff-intervenors claim that, because this "analysis" was not a report which was filed with the government, the "self-evaluation" privilege does not apply to it. Defendants contend Swartz's "analysis" was performed in order to prepare the written affirmative action program plan which the government requires of defendants.

Plaintiff and Plaintiff-intervenor request the court embrace the holdings in some recent cases which apply the "self-evaluation" privilege only to documents which must be filed with the government. Such an approach may be overly narrow and thus controvert the purpose behind the privilege to encourage *voluntary* compliance with the equal employment opportunity laws. The court finds defendants have shown that Mr. Swartz's "analysis" was performed in preparation for a report required by the government. Therefore, the "self-evaluation" privilege should apply to it. The court overrules in part the motion to compel and will not require Mr. Swartz to answer questions about subjective evaluations in his "analysis." The court sustains in part plaintiff and plaintiff-intervenor's motion to compel to require him to answer questions about any objective data in the "analysis." The court's ruling regarding follow-up questions which may be asked of Mr. Washington also applies to Mr. Swartz. Plaintiff and plaintiff-inter-

venor may pursue reasonable inquiry. At this time, however, the court will not summarily determine whether Mr. Swartz must answer all follow-up questions.

·Plaintiff and plaintiff-intervenor also request the court award them the costs of bringing this motion pursuant to Fed.R. Civ.P. 37(a). Circumstances do not justify an award of sanctions. Plaintiff and plaintiff-intervenor's request for expenses is denied.

Defendants' Motion to Compel (doc. 779)

■ Defendants request an order, pursuant to Fed.R.Civ.P. 37, compelling plaintiff-intervenor to answer Interrogatories 4 and 5(d) of Defendants' Interrogatories to Plaintiff and Plaintiff–Intervenor Regarding Communications with Potential Claimants—First Set. The interrogatories at issue in this motion are set forth below:

4. Identify any current or former employee or any applicant for employment at United Telecommunications or any of its current or former subsidiaries who has claimed to be a victim of sex discrimination.

5. For each such individual identified in response to Interrogatory No. 4, state:

.        .        .        .        .

(d) All facts, representations, statements, or circumstances which the individual relies upon in support of their claim of sex discrimination.

Plaintiff and plaintiff-intervenor objected to the interrogatories as overly broad, irrelevant, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and invading the attorney-client privilege, work-product doctrine, government's informers privilege, and deliberative process privilege. Notwithstanding these objections, plaintiff-intervenor has agreed to identify potential claimants at a later date.

Interrogatories 4 and 5(d) are relevant to the subject matter of this action and may lead to the discovery of admissible evidence.

Plaintiff-intervenor's objections to the interrogatories on grounds of overbroadness, burdensomeness and the government's deli-

berative process privilege fail generally for lack of support. *See Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982,* 697 F.2d 277, 279 (10th Cir. 1983) ("burden of establishing applicability of a privilege rests on the party seeking to assert it"); *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 297 (E.D.Pa.1980) (burden on objecting party to show interrogatory improper). The court therefore overrules these objections to Interrogatories 4 and 5(d), with one exception. The request in 5(d) to state all "circumstances" is on its face too broad and burdensome. The interrogatory also asks for all "facts." The court interprets "circumstances" to refer to something .in addition to "facts." Such an open-ended term would conceivably include opinions, discussions, subjective decisions and a host of other things limited only by one's imagination. The motion to compel is overruled as to the disclosure of circumstances.

■ Plaintiff-intervenor has not adequately shown, moreover, that an attorney-client relationship exists between the EEOC's counsel and potential claimants. If such a relationship did exist, the attorney-client privilege would nevertheless not apply to the interrogatories at issue. The attorney-client privilege extends to communications, but not to all facts which may be learned in the course of such communications. *Casson Construction Co., Inc. v. Armco Steel Corp.,* 91 F.R.D. 376, 384 (D.Kan.1980). Likewise, the work-product doctrine does not protect against the disclosure of facts or the identity of persons .from whom the facts are learned. *Casson* at 385. Interrogatory 4 merely requests the identification of claimants. Interrogatory 5(d) requests facts upon which the claims are based. Therefore, the court overrules plaintiff-intervenor's attorney-client privilege and work-product objections to disclosing "facts." The court sustains the work-product privilege, however, with respect to all "representations" and "statements" to the extent it would require disclosure of any questionnaire or document submitted with a questionnaire of the type approved by the court in its previous order of September 30, 1986 (doc. 753).

■ The final matter before the court in this motion is whether or not the informer's privilege protects from disclosure, the identities of defendants' employees who claim they have been victims of sex discrimination.

In general, the informer's privilege is "the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 8 C. Wright and A. Miller, Federal Practice and Procedure, § 2019 at 155 (1970). The privilege has been applied to civil cases, but as plaintiff-intervenor points out, the published case law applying the privilege to Title VII is "scanty."

One of the few discrimination cases applying the informer's privilege is *EEOC v. Los Alamos Constructors, Inc.,* 382 F.Supp. 1373 (D.N.M.1974). The court in *Los Alamos* found the informer's privilege protected the identities of "informers" to the EEOC. However, the court ordered plaintiff to disclose the names of persons having knowledge of the facts of the case. *Id.* at 1386. The court did not define who it considered "informers" except that it said it was "using the word in its usual sense." *Id.* The *Los Alamos* opinion gives an exhaustive account of cases where the informer's privilege has been considered. In one of those cases, *Hodgson v. Cornhusker Packing Company,* 51 F.R.D. 515 (D.Neb.1970), the privilege was applied to protect the identities of employees from whom the plaintiff had obtained a written statement concerning any issue in the case. *Hodgson* at 517. The *Hodgson* court and many other courts which have considered the informer's privilege in a civil context, look to the criminal case of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) for guidance when considering the application of the informer's privilege. *See generally* Annotation, Application, in Federal Civil Action, of Governmental Privilege of Nondisclosure of Identity of Informer, 8 ALR Fed. 6 (1971 and Supp.1986). *Roviaro* set forth the fol-

lowing important limitation on the informer's privilege:

> [A] limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Roviaro* 353 U.S. at 60–61, 77 S.Ct. at 628.

In *Hodgson,* the court considered the above limitation and applied the informer's privilege only because nondisclosure of the identities of employees who had made written statements would not hinder defendant's case preparation. In that case, plaintiff had already disclosed the identities of all employees who allegedly had been improperly paid. *Hodgson* at 516–17.

We now turn to the issue of whether or not to apply the informer's privilege in this action. Interrogatory 4 seeks the identities of all those who claim to be victims of sex discrimination. Plaintiff-intervenor argues that this interrogatory in effect seeks the identities of persons who have answered its questionnaire. Plaintiff-intervenor contends the identities of these women should be protected because the fear of reprisal that is typical in other cases where the informer's privilege applies is also present here. (*See* Affidavit of Sandra J. Carey, doc. 783.) Plaintiff-intervenor also states that it knows the privilege is not absolute, and it is willing to disclose the identities of these women at a later date. Plaintiff-intervenor claims that disclosure at a date closer to trial will give it time to identify other claimants from defendants' computer tapes and personnel files. With this longer list of claimants from various sources, plaintiff-intervenor argues it will be able to mask those who responded to the questionnaires.

Interrogatories 4 and 5(d) seek the identity of all claimants and the facts which support their claims, not just discovery with regard to those who responded to plaintiff-intervenor's questionnaires. This is vital information. Defendants are entitled to it in order to prepare their case. Therefore, according to the guidelines set forth in *Roviaro,* any informer's privilege must give way to the need of defendants for the information. Plaintiff-intervenor's argument that disclosure should begin at a later date carries little persuasion. Discovery of defendants' computer tapes and personnel records has or should have progressed simultaneously with investigation by questionnaires. Plaintiff-intervenor can readily mask the identities of claimants who responded to the questionnaires by mixing them with those from other sources. Therefore, the court overrules plaintiff-intervenor's claim of informer's privilege with regard to Interrogatories 4 and 5(d).

The court thus grants in part and overrules in part defendants' motion to compel (doc. 779). Plaintiff-intervenor is ordered to answer the interrogatories as fully as it can by July 20, 1987 and to supplement its answers on the 20th day of each subsequent month as to any additional complainants of whom plaintiff-intervenor becomes aware. The court finds circumstances do not merit an award of expenses pursuant to Fed.R.Civ.P. 37(a)(4).

In conclusion, both motions to compel (docs. 748 and 779) are granted in part and denied in part.

IT IS SO ORDERED.