**Milos J. JIRICKO, M.D.; and Montgomery County Anesthesia Associates, Plaintiffs,**

v.

**COFFEYVILLE MEMORIAL HOSPITAL MEDICAL CENTER; Board of Trustees of Coffeyville Memorial Medical Center; Paul Sandhu, M.D.; Kenneth S. Parker, D.O.; B.E. Howerter, M.D.; Phillip E. Middleton, M.D.; the City of Coffeyville; Bart Solenthaler; Eugene Brown; Homer Denny; Martha Powell; William T. Read; Ed O'Rear; Henry J. Honas; Coffeyville Doctors Clinic, P.A.; Chan Han, M.D.; Eugene Gibbs, M.D.; and K.D. Shirsat, M.D., Defendants.**

No. 84–1775–K.

United States District Court, D. Kansas.

Nov. 4, 1988.

---

Charles L. House, Gilbert P. Bourk, III, Kansas City, Mo., for plaintiffs.

Alan L. Rupe, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., Mary S. Martin, City Atty., City of Coffeyville, Coffeyville, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This case is presently before the court on several motions: First, separate defendants, The Coffeyville Doctors Clinic, P.A. and Drs. Parker, Sandhu, Howerter, Middleton, Han and Gibbs, move for summary judgment, contending that as actors in the peer review process their actions are state actions, and that they are immunized from liability for violations of the federal antitrust laws (Counts I, II and III); second, defendants City of Coffeyville, Board of Trustees of Coffeyville Memorial Hospital Medical Center, and Coffeyville Memorial Hospital Medical Center move for summary judgment, contending that they are immune by Kansas statute for violations of the Kansas Antitrust Act (Count IV); third, defendant Paul Sandhu moves for summary judgment on Counts VII and VIII (intentional infliction of emotional distress and libel, slander and trade disparagement), contending that there is no diversity of citizenship and that this is not a proper case for the court to exercise pendent jurisdiction; and finally, plaintiffs Jiricko and Montgomery County Anesthesia Associates, P.A. move to compel discovery of peer review documents and oral communications by defendants, contending that the peer review privilege of K.S.A. 65–4915 and the work product privilege of Fed.R. Civ.P. 26(b)(3) do not protect these matters from discovery.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Because the court finds that defendants are not entitled to a judgment in their favor on any of the counts on which they move for summary judgment, the motions for summary judgment will be denied. Plaintiffs' motion to compel will be granted.

The facts as plaintiffs allege them involve actions by doctors on the hospital staff taken with the intent to blacklist plaintiff Jiricko and exclude him from the Coffeyville medical community. Dr. Jiricko, an anesthesiologist, began working at Coffeyville's only hospital in July, 1979.

Dr. Jiricko became head of the hospital's department of anesthesiology. He was the only anesthesiologist in the Coffeyville area. Dr. Jiricko formed Montgomery County Anesthesiology Associates ("MCAA") and caused it to employ various of the hospital's nurse anesthetists, including Glen Stevens. Dr. Sandhu asked Dr. Jiricko to increase Glen Stevens' salary to $50,000.00 per year. Plaintiff refused, and defendant Sandhu declared he would no longer be plaintiff's friend. Subsequently, Glen Stevens' employment with MCAA was terminated and he became employed by the clinic and Dr. Sandhu.

In January of 1980, Dr. Shirsat, an anesthesiologist, became associated with the clinic and Dr. Sandhu. In December, 1983, Jiricko and MCAA received notices from the hospital declaring that a medical staff ad hoc committee had concluded that Dr. Jiricko had "flagrantly violated the medical staff by-laws" of the hospital. Dr. Jiricko contends that the report of the committee contains false statements about him and about a nurse anesthetist employed by MCAA. Dr. Jiricko claims that the report was circulated among the doctors and the medical staff by the committee with the intent to harm the practice and reputation of Dr. Jiricko and MCAA. Dr. Jiricko further contends that Dr. Sandhu, at a meeting of the executive committee, falsely stated that Dr. Jiricko was of unsound character and mentally impaired. This statement was made at the time the executive committee was considering the ad hoc committee's report and at which meeting the executive committee decided to place a formal letter of reprimand in Dr. Jiricko's file, without notice to him or a hearing of any kind. Plaintiff additionally alleges that the defendants informed other physicians on the medical staff not to refer cases requiring anesthesia to Jiricko and

MCAA or risk losing referral patients themselves.

As a result, Dr. Jiricko claims that his practice of anesthesiology has been restrained, the only competition with Dr. Sandhu, Sandhu's clinic and Dr. Shirsat has been effectively removed, and Dr. Jiricko has been forced to leave the Coffeyville medical community.

### Defendants' Motion for Summary Judgment on Counts I, II and III

■ The defendants contend that their actions as part of the peer review process are exempt from the application of the federal antitrust laws because they constitute "state action."

In *Parker v. Brown,* 317 U.S. 341, 351, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943), the United States Supreme Court held that the Sherman Act was not intended to restrain state action or official action directed by a state. The Supreme Court has also recognized that the state action exemption should also apply in certain suits against private parties. *See, e.g., Southern Motor Carriers Rate Conference, Inc. v. United States,* 471 U.S. 48, 56, 105 S.Ct. 1721, 1726, 85 L.Ed.2d 36 (1985). The Supreme Court created a two-part test to determine whether anticompetitive conduct engaged in by private parties should be deemed state action and thus shielded from application of the antitrust laws. First, "[t]he challenged restraint must be one clearly articulated and affirmatively expressed as state policy," and second, "the anticompetitive conduct must be actively supervised by the state." *California Retail Liquor Dealers Association v. Midcal Aluminum,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980) (quoting *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed. 2d 364 (1978)).

The second prong of this test has most recently been illuminated by the Supreme Court in *Patrick v. Burget,* 486 U.S. ——, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988).

The facts of *Patrick* bear many similarities to the case at bar. Patrick, a general and vascular surgeon, joined the Astoria

Clinic in Astoria, Oregon (population 10,-000) in 1972. The only hospital in Astoria was Columbia Memorial Hospital. A majority of the staff at Columbia Memorial were partners or employees of the Astoria Clinic. After his one-year contract with the Astoria Clinic expired, Patrick was asked to become a partner. He declined and set up an independent practice. From then on, the doctors in the clinic reacted negatively to Patrick. He received virtually no referrals from the clinic. Even when there was no general surgeon at the clinic, the doctors sent patients to hospitals 50 miles away rather than referring them to Patrick. It also appeared that clinic doctors tried to prevent Patrick from seeing new patients. If patients arrived in the emergency room asking for Dr. Patrick, they were told he was not available, but no attempt was made to contact him. In 1979, these difficulties erupted. One of the clinic's doctors complained of Patrick's handling of a case, and other clinic doctors testified to an investigative committee of the Oregon Board of Medical Examiners chaired by an Astoria Clinic doctor. A reprimand letter was issued and later retracted when Patrick filed a petition for judicial review. As a result of peer review proceedings within the hospital in 1981, the medical staff began proceedings to terminate Patrick's privileges at the hospital. Throughout these hearings the committee was inattentive to Patrick, who resigned before revocation of privileges could appear on his record.

The Court did not consider whether the first prong of the test, the "clear articulation" prong, was satisfied, because it held that there was no "active supervision" by the state to satisfy the second prong. The Court examined three possible ways that the state could have actively supervised the peer review process.

First, the Court looked at the state health division and found that by statute it had general supervisory powers over matters relating to preservation of life and health; could license hospitals and enforce health laws; could require hospitals to set up peer review proceedings and review these procedures on a regular basis; and could start judicial proceedings against any hospital violating this law and deny, suspend or revoke a hospital's license for failure to comply with the statutory requirement.

This, according to the Court, did not establish a state program of active supervision of peer review decisions. The authority of the health division over peer review was limited to its procedures and did not encompass the actual decisions made by the peer review committees. The health division had no authority to overturn a decision of the peer review process that failed to accord with state policy.

The Court then looked to the board of medical examiners to see if they actively supervised the peer review decision. The Court found that the function of the board was to regulate licensing of doctors in the state. Hospitals were required to let the board know when they took away a physician's hospital privileges. The Court found that the board had no power to disapprove private privilege decisions.

Finally, the Court addressed the state judiciary. The Court did not decide if judicial review of private conduct could ever constitute "active state supervision," because it found that judicial review of privileged termination decisions in Oregon, if such review existed at all, fell short of satisfying the active supervision requirement. This was so because no statute provided judicial review of privilege terminations and no case had ever held that such judicial review was available. In two cases, the Oregon courts had assumed, but specifically had not decided, that review was available. Even if there were judicial review, the review would have been of a limited nature. The Oregon courts had said that they would not review the merits of a privilege termination decision to determine whether it accorded with state regulatory policy. The Court therefore concluded that judicial action in this case would also not change the actions of a private party into state action.

Recently, the Eleventh Circuit, relying on *Patrick*, addressed the same issue and held

that judicial review in Florida of peer review decisions to revoke a doctor's hospital privilege could constitute active state supervision, satisfying the second prong of the *Midcal* test. In *Bolt v. Halifax Hospital Medical Center*, 851 F.2d 1273, 1282 (11th Cir.1988), the court enlarged upon *Patrick* and formally held that judicial review could constitute active state supervision for purposes of the state action exemption. However, this review had to be available on an established basis and be of a sufficiently probing nature. That is, it must encompass the fairness of procedures used in reaching the decision, and must also involve consideration of whether the criteria used by the decisionmakers were consistent with state policy and whether the decision had a sufficient basis in fact. Without explaining the Florida decisions upon which it based its conclusions, the court held that, based on its research of Florida cases, such judicial review was available and could constitute active state supervision.

This court must determine if any state body in Kansas or the Kansas courts have the ability to review the merits and not merely the procedure of peer review decisions, especially decisions to file letters of reprimand against a doctor. Both parties in this suit have contended that the Kansas statutory scheme is similar to the statutes in Oregon. After a review of the statutes cited by the parties, none specifically gives any review power over the merits of the peer review decision to any state body.

Kansas courts have never addressed the issue of whether the merits of a peer review decision are subject to judicial review. In the absence of any authority demonstrating otherwise, this court must conclude that Kansas does not "actively supervise" peer review decisions, and defendants' actions cannot therefore be considered "state action" for purposes of immunity from federal antitrust laws. Consequently, defendants' motion for summary judgment on Counts I, II and III must be denied. For purposes of the motions presently before the court, the court assumes but does not decide that the facts of this case reach an antitrust violation per se, as this matter is not before the court.

Having decided that the "state action" exemption doctrine does not apply to exempt defendants from application of the federal antitrust laws, the court is now prepared to rule on the remaining motions.

### Motion for Summary Judgment on Count IV

■ Defendants, the City of Coffeyville, the Board of Trustees of the Coffeyville Memorial Hospital Medical Center ("BOT"), and the Coffeyville Memorial Hospital Medical Center ("Coffeyville Memorial"), contend they are immune by state statute from the state antitrust claims made against them.

Defendants cite K.S.A. § 12–205(b) (1987 Supp.), which provides, "Except as provided in subsection (d), such municipalities and the officers and employees thereof shall be exempt from civil liability except for injunctive relief under the antitrust laws of the state of Kansas...."

This statute, however, was adopted in 1985, well after the time of the actions forming the basis of plaintiffs' complaint. The statute cannot be read to grant immunity to defendants from the Kansas antitrust laws. The motion for summary judgment is therefore denied.

### Motion for Summary Judgment on Counts VII and VIII

■ Defendant Paul Sandhu contends that this court has no jurisdiction over the state claims asserted against him for intentional infliction of emotional distress (Count VII), and libel, slander, and trade disparagement (Count VIII). Defendants rely on *National Insurance Underwriters v. Piper Aircraft*, 595 F.2d 546 (10th Cir. 1979), to demonstrate that the exercise of pendent jurisdiction over plaintiffs' state claims against Dr. Sandhu is improper. In *National Insurance*, the Tenth Circuit held that "[s]ince Congress in 28 U.S.C. § 1332(a) negated jurisdiction as to parties against whom plaintiff had a claim insufficient in amount, this court must hold that the district court did not have the power to

exercise pendent party jurisdiction...." 595 F.2d at 551.

Since jurisdiction in the instant case is not based on diversity, nor are plaintiffs in their state claims attempting to bring a party who is not a defendant in the federal action into federal court using a pendent claim, defendants' reliance on *National Insurance* is not well founded.

In the instant case, plaintiffs present a federal claim under the Sherman Antitrust Act. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the Supreme Court recognized that state claims against a party which "derive from the same nucleus of operative fact" as a federal claim may be brought into federal court along with a substantial federal claim. In the instant case, the state law causes of action which plaintiffs assert arise from the same set of facts which form the basis of their antitrust claims. The actions of various doctors on the hospital staff (including defendant Sandhu), taken as part of the peer review process and resulting in a formal letter of reprimand attached to Dr. Jiricko's file, form the basis for both plaintiffs' federal and state claims. The facts at issue in the state claims concern statements Dr. Sandhu allegedly made at the executive committee meeting. These same statements and the related actions of other defendants, both at that committee meeting and at other meetings, form the factual basis of Dr. Jiricko's antitrust claims. The exercise of pendent jurisdiction over Counts VII and VIII is therefore proper.

*Plaintiffs' Motion to Compel*

Plaintiffs have asked this court to compel defendant to answer certain questions to which defendants have objected on the basis of the peer review privilege of K.S.A. § 65–4915 and the work product privilege of Fed.R.Civ.P. 26(b)(3).

**1.** *Peer Review Privilege*

■ Defendants contend that their actions as part of the peer review process are privileged from discovery under K.S.A. § 65–4915. Plaintiffs have brought both federal and state claims against various defendants. Under similar circumstances, courts have consistently held that questions of privilege are controlled by principles of federal law rather than state statutes. *Pinkard v. Johnson,* 118 F.R.D. 517, 520 (M.D.Ala.1987); *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). Nevertheless, courts have recognized that the policies behind state privileges such as a peer review privilege must still be considered, and have balanced the need for discovery with the importance of the policy to be furthered by the privilege. In cases involving claims under the antitrust laws where abuse of the peer review process was alleged as the basis for the conspiracy, courts have consistently refused to recognize the peer review privilege. In a factually similar case in the Seventh Circuit, the court noted, "[t]he public interest in private enforcement of federal antitrust law in this context is simply too strong to permit the exclusion of relevant and possibly crucial evidence by application of the Hospital's privilege." *Memorial Hospital,* 664 F.2d at 1063 (footnote omitted).

The court recognized that the doctor's claim arose out of the disciplinary proceedings themselves, and denying discovery of evidence of those proceedings might prevent the plaintiff from bringing the action altogether.

On almost identical facts, the court in *Robinson v. Magovern,* 83 F.R.D. 79 (W.D. Pa.1979), allowed discovery of allegedly protected hospital peer review records, reasoning that "the subject matter of the discovery goes to the heart of the issues in this case, i.e., why Robinson was denied staff privileges." *Id.* at 89.

Similarly, in the instant case, Dr. Jiricko's antitrust claims center on activity within the peer review process. Although confidentiality furthers important goals, in this case denying discovery of the peer review activities would effectively prevent Dr. Jiricko from bringing his lawsuit. Furthermore, allowing discovery will not intrude on the privacy of any patient whose case might be reviewed, because this court

has previously ruled to strike patient names for confidentiality.

Therefore, plaintiffs' motion to compel a response to questions regarding the peer review procedures at issue in this case will be granted.

### 2. *Work Product Privilege*

■ Defendants also contend that certain conversations among defendants regarding this litigation, and certain conversations among defendants and third parties are protected from discovery pursuant to the work product privilege of Fed.R.Civ.P. 26(b)(3). Plaintiffs seek to compel discovery.

In order to be given a qualified immunity under Rule 26(b)(3), which addresses the work product privilege, the information sought to be protected must be (1) documents or tangible things, (2) prepared in anticipation of litigation or for trial, and (3) by or for another party or by or for that other party's representative.

Under this definition, oral communications such as those at issue here cannot be given immunity from discovery, and plaintiffs' motion to compel a response to questions regarding these communications will be granted.

Plaintiffs further ask this court to find that if defendants were to assert a peer review privilege regarding action taken by the hospital or staff on the application for hospital privileges by one Michael Cunningham, the information sought would not be protected from discovery. Since plaintiffs have not yet attempted to make discovery of this action, there is as yet no controversy before the court and a ruling on the application of a privilege not yet asserted would be premature.

Finally, plaintiffs ask the court to find that "the work product privilege does not apply to attempts by defendants to coordinate or conceal their illegal actions through common legal counsel." Again, this does not appear to be an issue before the court at this time.

IT IS ACCORDINGLY ORDERED this 4 day of November, 1988, that the defendants' various motions for summary judgment are denied. It is further ordered that the plaintiffs' motion to compel responses is granted as to the discovery which has been attempted by plaintiffs and to which defendants have objected.