Mao–Shiung WEI, Plaintiff,

v.

Arnold BODNER, et al., Defendants.

Civ. A. No. 89–1137 (AET).

United States District Court,
D. New Jersey.

June 7, 1989.

Diane Raposo, Lampf, Lipkind, Prupis & Petrigrow, P.C., West Orange, N.J., for plaintiff.

Joseph R. McDonough, Ribis, Graham, Verdon & Curtin, Morristown, N.J., for defendant Medical/Dental Staff of Hackettstown Community Hosp.

Theodore E.B. Einhorn, M. Carole Duffy, Einhorn & Harris, P.C., Denville, N.J., for defendant Hackettstown Community Hosp.

Kevin R. Jespersen, Eletha L. Duffy, Manger, Kalison, McBride & Webb, Morristown, N.J., for defendant Varsala Narayanan M.D.

## MEMORANDUM AND ORDER

FREDA L. WOLFSON, United States Magistrate.

The plaintiff, Dr. Mao–Shiung Wei, an anesthesiologist, brought this suit alleging that the defendants, Hackettstown Community Hospital (the "Hospital"), Drs. Arnold Bodner and Valsala Narayanan (jointly referred to as the "Doctors") and the Medical Staff of Hackettstown Community Hospital (the "Staff"), have taken actions to prevent him from competing in the market for anesthesia services. Those actions allegedly include using a system of assigning patients that enables the defendants to avoid using Dr. Wei's services, investigating his competence in an effort to discredit his reputation and reducing his status at the Hospital. The complaint alleges that the defendants have violated the Sherman Act, 15 U.S.C. § 1. Jurisdiction is therefore based on the existence of a federal question. 28 U.S.C. § 1331. The complaint also includes several pendant state claims including conspiracy to stifle competition and common law tort and breach of contract claims.

Currently before the Court is the plaintiff's motion to compel discovery. Plaintiff's counsel served all of the defendants with a notice to produce documents dated March 23, 1989. An additional notice to produce documents dated April 13, 1989 was also served on the defendants. This motion was filed to compel the production of documents responsive to items 12 and 13 of the first request and items 1–4, 7, 8 and 12 of the second request. Briefly, those items request the following:

1) Documents containing an inquiry, criticism, objection or other concern about the anesthesiology services of the Doctors (items 12 and 13 of the first request);

2) Documents concerning patient cases involving anesthesia that were referred by the Quality Assurance Committee to the Anesthesiology Department for review (item 1 of the second request);

3) Minutes of the Quality Assurance Committee which relate to such referrals (item 2 of the second request);

4) Documents discussed or reviewed at Anesthesiology Department meetings that relate to cases referred by the Quality Assurance Committee (item 3 of the second request);

5) Documents relating to recommendations or corrective actions taken against physicians in some patient cases (item 4 of the second request);

6) Studies, records and reports relating to the administration of anesthesiology at the Hospital (item 7 of the second request);

7) Documents concerning cases in which a patient suffered an adverse reaction to the administration of anesthesia (item 8 of the second request); and

8) Documents concerning all instances from 1975 to date where a physician's status at the Hospital was changed from full attending to provisional attending (item 12 of the second request).

Furthermore, plaintiff seeks production of the documents without redaction of the patients' names.

Each of the defendants has refused to produce the documents. Instead, they assert that the documents are protected by the work product, attorney-client, physician-patient, self-evaluative and peer review privileges.[1] As to the latter three

---

1. Some defendants have raised other objections as well. Except as specifically noted in this opinion the objection that the documents sought are not reasonably calculated to lead to admissi-

privileges, the defendants contend that both federal and state privileges are applicable.

As discussed herein, defendants have not yet provided sufficient information for the Court to determine whether the attorney-client or work product privileges are applicable. Therefore, documents for which these privileges have been asserted need not be produced at this time. All other documents responsive to plaintiff's requests must be produced. Patient's names are to be redacted to protect their interests. In place of the patients' names, the defendants must insert a control number. All documents pertaining to an individual patient must contain the same number. This will enable the plaintiff to correlate the many different documents that may refer to a single patient. The sole exception to this numbering requirement is the billing records. The billing records must be produced with patient names redacted but need not have a control number inserted. Finally, a protective order will be entered limiting the use of all of these documents to this litigation. An order embodying this decision accompanies the opinion.

This opinion will first address whether state or federal privilege law is applicable to the case at bar. The general policies behind discovery, privileges and the Sherman Act will then be addressed. These policies are equally applicable to all of the asserted privileges. Finally, each of the asserted privileges will be addressed in turn.

### I.

Any discussion of discovery begins with the federal rules that address that subject. Under *Fed.R.Civ.P.* 26(b)(1), any information that is not privileged is discoverable if it is relevant to the action or reasonably calculated to lead to admissible evidence. The party claiming a privilege has the burden of establishing that the privilege exists and that it is applicable. *See Brock v.*

*Gerace,* 110 F.R.D. 58 (D.N.J.1986). Although not specifically stated in the rule, the privileges referred to in Rule 26 are those embodied by *Fed.R.Evid.* 501. *See Robinson v. Magovern,* 83 F.R.D. 79 (W.D. Pa.1979). *Cf. United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (the privileges referred to in former *Fed.R. Civ.P.* 34 are evidentiary privileges).

*Fed.R.Evid.* 501 states:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

■ Under this rule, federal privileges are controlling in federal question cases. *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100 (3d Cir.1982). Where, as here, there are both federal and state law claims, federal privileges rather than state privileges apply to all claims. *Id.* The court in *Wm. T. Thompson Co.* based its decision on the legislative history of Rule 501 and on the federal practice of disfavoring privileges that are not constitutionally based.

■ Although the state privileges are not controlling in this case, the public policies behind them should not be ignored. *See Riley v. City of Chester,* 612 F.2d 708 (3d Cir.1979). When the policies are considered important enough for the privilege to be applicable to a case in federal court, the privilege is applied as a matter of fed-

---

ble evidence is without any merit. The objection that production of the documents is unduly burdensome is also without merit. The Doctors' contention that the patients' constitutional right

to privacy would be infringed by disclosure of unredacted documents is addressed *infra* in the section on the physician-patient privilege.

eral common law. It is not applied as a matter of state privilege law. *See Gannet v. First National State Bank of New Jersey,* 546 F.2d 1072 (3d Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). Therefore the court is not required to give the privilege the identical substance and effect that a state court would, unless the federal court finds that to do so is necessary and appropriate as a matter of federal common law. The federal court can analogize to the state privilege and what a state court would do to guide the development of federal common law. *See Wm. T. Thompson Co.*

■ The state privilege should be considered in federal question cases by balancing the need for the discovery against the importance of the policies behind the privilege. *See Jiricko v. Coffeyville Memorial Hospital Medical Center,* 700 F.Supp. 1559 (D.Kan.1988). The policies behind the privilege should be given effect if it is possible to do so at "no substantial cost to federal substantive and procedural policy." *See Lora v. Board of Education of City of New York,* 74 F.R.D. 565 (E.D.N.Y.1977).

## II.

The federal substantive and procedural policies implicated in the instant situation are the policies behind the Sherman Act, the discovery rules, and the use of privileges in federal practice. These concerns pervade all of the privileges asserted by the defendants in this action.

■ The Hospital asserts that "... the public need for confidentiality far outweighs the *private* need for disclosure." Brief of Defendant Hackettstown Hospital, p. 5 (emphasis added). The contention that there is only a private need for disclosure wholly disregards the legislative history and public policy behind the Sherman Act. Antitrust laws attempt to ensure that competition is based on efficiency. *See Connell Construction Co. v. Plumbers and Steamfitters Local Union No. 100,* 421

U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). The laws prevent not only harm to an individual but also harm to the general public. *See D.R. Wilder Manufacturing Co. v. Corn Products Refining Co.,* 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520 (1915).

■ The purpose of the Sherman Act is to protect the public from the harm that commonly occurs when competition is destroyed. *See Charles a Ramsay Co. v. Associated Bill Posters of United States and Canada,* 260 U.S. 501, 43 S.Ct. 167, 67 L.Ed. 368 (1923). This harm is considered a "special form of public injury." *See Apex Hosiery Co. v. Leader,* 310 U.S. 469, 493, 60 S.Ct. 982, 992, 84 L.Ed. 1311 (1940).

The fact that, if plaintiff prevails, only he will collect damages is of no importance. By permitting the collection of treble damages, Congress "... has encouraged private antitrust litigation not merely to compensate those who have been directly injured but also to vindicate the important public interest in free competition." *Fortner Enterprises Inc. v. United States Steel Corp.,* 394 U.S. 495, 502, 89 S.Ct. 1252, 1258, 22 L.Ed.2d 495 (1969).

Dr. Wei has brought this suit alleging, in part, that the defendants are attempting to stifle competition in anesthesiology services. Over the past several years medical costs have increased at a rate far in excess of inflation. Health care costs are taking up an increasing portion of the Gross National Product.[2] Bureau of the Census, Statistical Abstract of the United States 1988 (108th Ed.). In situations where health care providers violate antitrust laws, these increases are needlessly exaccerbated. It is in everyone's interest to have medical costs include only those costs appropriate under the law.

■ As noted, policies behind the discovery rules are also implicated by the privileges asserted by the defendants. The framework provided for discovery by *Fed. R.Civ.P.* 26 evinces a broad policy favoring full disclosure of facts before trial to aid

---

2. The Court takes no view on the propriety of these increases and recognizes that they are due

partly to this country's aging population.

the search for the truth. Under the current liberal rules, discovery is intended to prevent the old practice of fostering surprises at trial. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir.1978), *reh'g. denied*, 578 F.2d 871 (5th Cir.1978). In place of the old system, all parties should have full access to the facts. *See Pierson v. United States*, 428 F.Supp. 384 (D.Del. 1977).

■ Complementing the broad discovery favored by the federal rules is the restrictive view of privileges in federal practice.[3] Privileges are disfavored in federal practice. *See Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). They "... are not lightly created nor expansively construed for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). To the extent that a privilege exists, its application should be limited to those situations where the privilege serves a greater public good than the predominate principle that courts seek the truth. *See Herbert.*

Having addressed the policies against finding the asserted privileges to be applicable here, it is now possible to turn to each of those privileges.

### III.

*Attorney–Client and Work Product Privileges*

As noted by the Court at oral argument, no substantive ruling can be made at this time regarding the attorney-client and work product privileges. The defendants have provided neither the Court nor the plaintiff with sufficient information regarding the documents for which these privileges are claimed. Accordingly, the defendants need not at this time produce any documents for which these privileges are claimed.[4]

■ At a minimum, for each document asserted to be protected by these privileges, the defendants must provide both

plaintiff and the Court with the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document and the privilege or privileges asserted. Counsel can refer to *Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 516 (D.N.J.1987) for an example of this format.

This information will enable the Court to determine such issues as whether the documents were prepared in anticipation of litigation, whether the information was intended to be confidential and whether there has been a waiver of the privileges. The mere assertion of these privileges, without a more complete description, does not provide the Court with sufficient information to determine whether the standards have been met. *See Kelchner v. International Playtex, Inc.*, 116 F.R.D. 469 (M.D.Pa.1987) and *United States v. Exxon Corp.*, 87 F.R.D. 624 (D.D.C.1980). Such information is also necessary for the party seeking discovery to have a full and fair opportunity to oppose the assertion of privilege. *Cf. Bierman v. Marcus*, 122 F.Supp. 250 (D.N.J.1954) (when a deponent asserts the attorney-client privilege the proper procedure is to have the deponent appear in court so he or she can be questioned by the court and counsel as to the basis for the privilege). Failure to provide the information offends the notions of due process inherent in the Constitution.

Plaintiff need not provide the substance of the documents' contents since doing so would clearly frustrate the purposes of the privileges. Rather, it is the general topic of each document that must be disclosed.

### IV.

*Physician–Patient Privilege*

The defendants also assert that the information sought is protected by the physician-patient privilege. They claim that, at the very least, this privilege should require that all patient's names be redacted from any documents that must be produced.

---

**3.** The policies supporting the privileges asserted by the defendants are discussed *infra.*

**4.** At argument counsel were given a briefing schedule regarding these two privileges.

Neither the Hospital nor the Staff appear to argue that there is a federal physician-patient privilege. The Doctors do, however, make this contention. As stated in *Robinson* and the cases cited therein, there is no physician-patient privilege as a matter of federal common or statutory law.

The Doctors have attempted to craft such a privilege by use of a syllogism. They contend that since there is a federal common-law psychotherapist-patient privilege (major premise), and since psychotherapists are licensed physicians (minor premise) therefore, there is a federal common-law physician-patient privilege (conclusion).

The syllogism, while creative, would not make a logician proud. Both the major and the minor premises are deficient. While the case cited by the Doctors, *In re Zuniga*, 714 F.2d 632 (6th Cir.1983), *cert. denied*, 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983), recognizes a psychotherapist-patient privilege, the court stated that many other federal courts have declined to recognize such a privilege. *See, also, In re Grand Jury Proceedings*, 867 F.2d 562 (9th Cir.1989). The decisions contrary to *Zuniga* undercut the Doctors' major premise. The minor premise is undercut by the fact that not all psychotherapists are physicians. Psychotherapist is a broad, imprecise term that can encompass psychiatrists, psychologists, social workers, clergy and others. Webster's Third New International Dictionary of the English Language Unabridged (G & C Merriam Co., 1978).

■ This Court need not decide whether a federal psychotherapist-patient privilege exists. Assuming, *arguendo*, that it does exist, the policies behind it do not call for extending the privilege to all doctor-patient relations. The relationship between a psychotherapist and her patient is substantially different from that between a doctor and her patient. *See Lora.* Patients must confide their most intimate dreams, hopes, fears, and other personal information to their therapists. Without full disclosure there is little hope that the therapy can be successful. While there are other medical situations in which confidentiality may be equally important, courts have recognized the special relationships that psychotherapists have with their patients in according these communications legal confidentiality in some situations. *Id.*

■ Although there is no federal physician-patient privilege, New Jersey has a statutory privilege protecting communications in such relationships. Under *N.J.S.A.* 2A:84A–22.2 (West 1976) communications between a physician and her patient are privileged, with some exceptions, if the communication was confidential and the doctor or patient thought it was reasonably necessary or helpful to make a diagnosis or to prescribe treatment.

The New Jersey legislature created the privilege to encourage open communications between doctors and their patients. *See Stempler v. Speidell*, 100 N.J. 368, 495 A.2d 857 (1985). Open communications ensure that the physician has all of the information necessary to diagnose and treat the patient.

Despite the important goals of the state privilege, it should be restrictively construed. *Id.* The need for confidentiality is not absolute and must be subrogated to more important interests of society. *See McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (N.J.Super.L.1979).

In the instant situation, the public interests behind enforcing the Sherman Act clearly outweigh the interest of giving full effect to New Jersey's statutory privilege. If all patient-physician communications were considered privileged here, Dr. Wei would have virtually no chance of successfully bringing suit. *See Jiricko.*

■ While the communications themselves are necessary to litigate this antitrust suit, Dr. Wei has shown absolutely no need for the patients' names. Not only does the state evidentiary privilege suggest that the names should be redacted, but also the constitutional right to privacy weighs in favor of removing patients' names from all documents. The Supreme Court, while holding that a New York statute requiring the disclosure of patient names was valid, in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct.

869, 51 L.Ed.2d 64 (1977), recognized that patients have a constitutional interest in protecting the disclosure of private information.

To protect this interest, it is sufficient for the court to have the patients' names redacted. *See Federal Trade Commission v. TRW, Inc.*, 479 F.Supp. 160 (D.D.C.1979), *aff'd*, 628 F.2d 207 (D.C.Cir.1980). Most people do not object solely to the disclosure of personal information. Rather it is the combination of the personal information with identifying information to which people object. *See Lora.* Once the identifying information is redacted, the majority of the privacy concerns are eliminated and the interests behind the Sherman Act, full discovery and limited privileges become predominate. *See Schachar v. American Academy of Opthalmology Inc.*, 106 F.R.D. 187 (N.D.Ill.1985). The patients' privacy interests are further protected here by the entry of a protective order limiting use of the discovery sought herein to this litigation. *See Lora.* With these protections in place, it is unlikely that patients would be inclined to hide information from their physicians. *See Schachar.* The policies behind the state privilege can, therefore, be given effect without harming the federal interests at stake.

To protect the privacy interests of the patients and give limited effect to the state physician-patient privilege, the names must be protected from disclosure. However, Dr. Wei has shown a need to correlate most documents that refer to a single patient with each other. This correlation is necessary for the plaintiff to have a complete picture of the defendants' allegedly improper economic activities. To provide the plaintiff with this information and, at the same time, protect the patients' privacy interests, the defendants must insert a number in place of the name of each patient. All documents that refer to the same patient must have the same number.

While the plaintiff has shown a need to have most documents correlated, no showing has successfully been made concerning the patients' billing records. The plaintiff contends that the billing records must be correlated to show the disparate economic effect of the defendants' allegedly improper activities. However, as the Court understands it, the proper measure of damages would not involve a comparison to the amounts the defendants have billed particular patients. Since the correlation of the billing records to the other documents sought is not reasonably calculated to lead to admissible evidence and is burdensome, the defendants can merely redact the patient names. Control numbers need not be inserted.

## V.

### Peer Review Privilege

The defendants contend that the documents sought are protected by a peer review privilege. This privilege is a matter of both New Jersey and federal statutory law. Both the state and the federal laws protect certain hospital peer review committees and their members from liability, provided that certain requirements have been met. The statutes also provide a limited privilege for the committee's activities.

The New Jersey privilege, *N.J.S.A.* 2A:84A–22.8 (Supp.1988), states that, with some exceptions, information and data obtained by utilization review committees cannot be disclosed. The privilege this statute creates is very limited. It applies only to utilization review committees, a term defined in the statute. *See Young v. King*, 136 N.J.Super. 127, 344 A.2d 792 (N.J.Super.L.1975). This privilege was created to encourage participation on these committees and to further the implementation of Medicare. *Id.*

Many other states have qualified peer review privileges as well. In *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058 (7th Cir.1981), the court stated that the Illinois peer review privilege was enacted to encourage hospitals to quickly take corrective action in response to inadequate medical care. By creating a limited privilege, the act enables people to speak more freely before the committee. *Id.* The *Robinson* court notes that the Pennsylvania statutory peer review privi-

lege also encourages open discussion in an effort to improve medical care.

Despite the advantages gained by statutory peer review privileges, courts have consistently held these policies to be outweighed by the policies behind federal antitrust laws.[5] *See, e.g., Memorial Hospital, Quinn v. Kent General Hospital, Inc.,* 617 F.Supp. 1226 (D.Del.1985), *Robinson, Jiricko* and *Dorsten v. Lapeer County General Hospital,* 88 F.R.D. 583 (E.D.Mich. 1980). Since the discovery sought goes directly to the substance of the antitrust claims and since the peer review committees can be used for anticompetitive purposes, the need for confidentiality is outweighed by the need for disclosure. *See Robinson.*

The defendants, at argument, conceded that in no known reported case has the privilege outweighed the federal antitrust policies. They have not provided the Court with sufficient reason to find differently in the instant case. The Staff contends that this case is different since it was brought after the creation of a federal peer review privilege. This argument, as discussed *infra,* is without merit in the context of antitrust cases. The Hospital contends that this case is different since one of the allegedly anticompetitive practices, the patient assignment system, actually enhances competition. This argument goes to the merits of the case rather than the discovery process. Needless to say, it also does not address the other allegedly improper practices.

The balancing between the policies behind the state privilege and the federal interest at stake must occur on a case by case basis. The mere fact that in other antitrust cases courts have held state peer review privileges to be inapplicable cannot, by itself, compel this court to reach the same result. However, it would be incongruous to reach a different result here since the New Jersey statute offers less protection than the statutes of most other states. *See McClain v. College Hospital,*

99 N.J. 346, 492 A.2d 991 (1985). On balance, in the case before the Court, the federal interests outweigh the policies behind the New Jersey peer review privilege.

■ In addition to the state privilege, there is a federal statutory peer review privilege. 42 U.S.C. § 11137(b)(1). The act provides that, with some exceptions, information reported under 42 U.S.C. § 11101 *et seq.,* the Health Care Quality Improvement Act of 1986, is confidential and cannot be disclosed. The parties have not cited, and this Court has not found, any cases on the applicability of this statute to the discovery process. It appears to be a question of first impression.

Although the defendants assert that all of the information sought is protected by the law, the statute states on its face that information can be disclosed to the physician involved in the peer review proceeding. Therefore, the privilege does not apply with respect to any proceedings concerning Dr. Wei.

■ Furthermore the privilege applies only to "information *reported* under this subchapter." 42 U.S.C. § 11137(b)(1) (emphasis added). The Hospital's counsel, at oral argument, conceded that there had been no reporting. In the absence of a reporting, the privilege does not cover any information from peer review proceedings.

■ Finally, even if there had been a reporting, the legislative history of the statute makes it clear that the statute does not cover a federal antitrust suit. The legislative history indicates that the privilege is qualified rather than absolute. H.R.Rep. No. 903, 99th Cong. *reprinted in* 1986 U.S.Code Cong. & Admin.News 6287, 6384. Congress, while attempting to improve medical care, crafted the act to prevent it from being used to hide antitrust violations. "The bill protects innocent and often helpless consumers from abuses by bad doctors without insulating improper anticompetitive behavior from redress."

---

**5.** The same result is generally, although less consistently, reached in other federal question cases. *See, e.g., Ott v. St. Luke Hospital of Campbell County, Inc.,* 522 F.Supp. 706 (E.D.Ky.

1981) and *Schafer v. Parkview Memorial Hospital, Inc.,* 593 F.Supp. 61 (N.D.Ind.1984). *But see, Doe v. St. Joseph's Hospital of Fort Wayne,* 113 F.R.D. 677 (N.D.Ind.1987).

*Id.* at 6386. In light of Congress' efforts to prevent the bill from being used to hide antitrust violations, this limited privilege should not be applicable where the plaintiff is alleging precisely that public harm. While this might encourage the filing of antitrust suits to obtain such information, Congress presumably has weighed the costs and benefits of the legislation that it has enacted. It is not for this Court to tip the scales in another direction.[6]

## VI.

### *Self–Evaluative Privilege*

■ The final privilege asserted that this Court must address is the self-evaluative privilege, sometimes known as the self-critical analysis privilege. As will be discussed *infra* this qualified privilege exists as a matter of both New Jersey and federal common law.

The New Jersey Supreme Court has acknowledged that this privilege has received increasing acceptance over the years. *See Loigman v. Kimmelman*, 102 N.J. 98, 505 A.2d 958 (1986). That court did not, however, reach the merits of the privilege in that case. The state case that provides the most guidance concerning the scope of the New Jersey common law privilege is *Wylie v. Mills*, 195 N.J.Super. 332, 478 A.2d 1273 (N.J.Super.L.1984). In that case, the court stated that confidentiality is the *"sina qua non"* of self-evaluation. Confidentiality is necessary, according to that court, to spark the frank discussions that can lead to improvements in public safety. The court held that while facts discerned in the course of a self-evaluation are not privileged, the evaluative opinions are privileged. The court premised its opinion and discussion of the privilege on several federal court decisions.

The genesis of the federal common law privilege is found in *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *aff'd*, 479 F.2d 920 (D.C.Cir.1973). In that malpractice action, the court concluded that confidentiality was essential to the self-evaluative meetings that are held at hospitals in an effort to improve patient care and treatment. Without confidentiality, according to the court, physicians would not openly criticize their colleagues for fear that the information would later be used in malpractice actions. The lack of full disclosure would, in turn, hinder the improvement of medical care. The court recognized the existence of a self-evaluative privilege and stated that to overcome the privilege there must be a showing of exceptional necessity.

*Bredice* addressed the privilege even though it was unnecessary to do so on the facts then before the court. At the time, *Fed.R.Civ.P.* 34 required that there be good cause for discovery to be obtained. The *Bredice* court found that the information sought had absolutely no relevance to the malpractice action and thus that there was not good cause for the discovery sought therein. *See Lloyd v. Cesna Aircraft Co.*, 74 F.R.D. 518 (E.D.Tenn.1977). In the absence of finding good cause as then required, the *Bredice* court did not have to reach the issue of privilege.

*Bredice* is further undercut by subsequent decisions of the Supreme Court. The result in that case is questionable in light of the *dicta* in *Nixon* and *Herbert* disfavoring new or expansive privileges. *See Robinson* and *Federal Trade Commission.*

Although the decision in *Bredice* is worthy of criticism, subsequent court decisions have generally recognized the existence of a qualified self-evaluative privilege. *See, e.g., Memorial Hospital, Mewborn, Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y.1987), and *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211 (D.Mass.1980). *See, generally,* Flanagan. Rejecting a General Privilege for Self–Critical Analysis, 51 George Washington L.Rev. 551 (1983).

At the very least the *Bredice* requirement that exceptional necessity must be shown to overcome the privilege goes too far. Such a requirement is too expansive

---

**6.** Courts can, of course, weed out suits not brought in good faith, by the use of *Fed.R.Civ.P.* 11.

and in derogation of the Supreme Court's express opinion that privileges should be narrowly construed. *But see, Mewborn v. Heckler,* 101 F.R.D. 691 (D.D.C.1984) (reaffirming the viability of *Bredice* and its requirement of exceptional necessity).

Moreover, outside of the D.C.Circuit, those courts that have recognized the privilege often have not applied the exceptional necessity requirement. These courts have applied a balancing test. *See, e.g., Hardy,* and *O'Connor.* If the need for the privilege is outweighed by the federal interests, then the privilege must fall. Certainly under this balancing test the privilege has been overcome here.

Furthermore, in the case at bar, the movant has met even the high threshold set out by *Bredice.* As already noted, without the documents sought herein, the plaintiff has little chance for success on his claims. Since the plaintiff's case would be severely hampered without the discovery, the privilege should not be recognized here. *Cf. Herbert* (an editorial process privilege will not be recognized since doing so would substantially interfere with the ability of plaintiffs to establish malice in defamation suits).

▇ Finally, antitrust suits are different from the malpractice context in which the self-evaluative privilege first arose. In malpractice actions such as *Bredice,* the issue is not what transpired during the evaluative process. Rather, it is whether there was negligence. *See Memorial Hospital.* In contrast, in an antitrust action where a physician is suing a hospital and others for anticompetitive actions, the claim arises directly from that process. *Id.* In the former type of situation, where the evaluative process is the source of information to support a claim independent of the review process, the privilege should prevail and disclosure should not be ordered. Where, as here, the party seeking discovery seeks redress from the evaluative process itself, the privilege must fall in favor of greater interests. *See* Flanagan, *supra.*

Because of the overwhelming public interests of the Sherman Act, and other federal interests, neither the state nor the federal self-evaluative privileges are applicable in this case.

### ORDER

IT IS on this 7th day of June, 1989,

ORDERED that, no later than 21 days from the date of this Order, defendants produce all documents responsive to items 12 and 13 of plaintiff's notice to produce documents dated March 23, 1989 and items 1–4, 7, 8, and 12 of plaintiff's notice to produce documents dated April 13, 1989, except those documents for which the attorney-client or work product privilege is asserted; and it is further

ORDERED that all patients' names be redacted from all documents; and it is further

ORDERED that for all documents, except billing records, in place of the patients' names defendants insert a control number; and it is further

ORDERED that a different number be used for different patients and that each patient have only a single number; and it is further

ORDERED that all of said discovery is subject to the following conditions:

1) All of said discovery shall be used solely for purposes of this litigation,

2) Said discovery shall not be made available in any form or manner to any person other than plaintiff, defendants, counsel for plaintiff and defendants, any person associated with or employed by counsel for plaintiff and defendants, and any experts retained by counsel for this action; and

3) Any party may apply to this Court for permission to disclose said discovery to persons not already included herein.