**Richard W. GRANGER**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION.**

Civ. A. No. 86–7562.

United States District Court,
E.D. Pennsylvania.

June 25, 1987.

Marvin I. Barish, Philadelphia, Pa., for plaintiff.

Paul F.X. Gallagher, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

In this action, the plaintiff has filed a motion to compel the production of the

defendant Amtrak's Investigation Committee Report ("report") which was prepared in connection with the plaintiff's on-the-job accident. Amtrak opposes the motion to compel and asserts that portions of the report are not discoverable. For the reasons that follow, the plaintiff's motion to compel will be granted in part and denied in part.

The plaintiff was involved in an accident on January 30, 1986, and allegedly sustained personal injuries, while employed by Amtrak as an electrician in Amtrak's Wilmington Maintenance Facility. Whenever an Amtrak employee is injured on the job, an Amtrak Investigation Committee Report is prepared. The report in issue was prepared by three Amtrak employees who are members of the Amtrak Investigation Committee: Edward L. Hill, General Foreman; Timothy Ziethen, Foreman; and Michael Reilly, Safety Representative. Amtrak has offered to make these three men available to the plaintiff for depositions. The report is prepared pursuant to Section 8 of Amtrak's System Safety Program, an internal system implemented by Amtrak to handle accidents and illnesses. Amtrak represents that the reports prepared pursuant to section 8 contain details concerning the happening of each accident. Amtrak has produced the report concerning the plaintiff's accident, but has deleted therefrom those portions with the captions "Accident Analysis", "Cause", "Contributing Factors" and "Committee Recommendations." Amtrak initially asserted that the deleted portions are not discoverable under the doctrine of "Subsequent Remedial Measures" and contended that evidence of subsequent remedial measures is not admissible at trial. *See* Fed.R.Evid. 407. Amtrak has abandoned this contention and now relies solely on the "Critical self-analysis" doctrine as a basis for its deleting from the report those portions captioned "Accident Analysis", "Cause", "Contributing Factors" and "Committee Recommendations".

Amtrak contends that the aforementioned portions of the report contain the mental impressions, opinions and recommendations of its employees, and are therefore privileged under the doctrine of "critical self-analysis". Amtrak represents that the report was prepared for the purpose of improving the safety of the railroad and that there is an overwhelming public interest in having the results and conclusions reached by the Committee held confidential so that the flow of ideas and suggestions with regard to the improvement of safety can continue unimpeded. Amtrak further asserts that to subject the conclusions, recommendations and opinions of its employees to discovery would inhibit the candid and conscientious evaluation of accidents on the railroad and would ultimately harm the public's interest in railroad safety.

The "critical self-analysis" doctrine has been employed by the courts to protect certain information from discovery particularly in instances where public policy outweighs the needs of litigants and the judicial system for accesss to information relevant to the litigation. 4 Moore's *Federal Practice* ¶ 26.60[3]; *Webb v. Westinghouse Electric Corp.*, 81 F.R.D. 431 (E.D.Pa. 1978). The doctrine is designed to encourage confidential self-analysis and self-criticism. *Federal Trade Commission v. T.R.W., Inc.*, 628 F.2d 207, 210 (D.C.Cir. 1980). Some of the cases which have applied the "critical self-analysis" doctrine have been cases wherein the plaintiff was seeking a hospital's evaluations of its clinical practices, *Gillman v. U.S.*, 53 F.R.D. 316 (S.D.N.Y.1971); *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *on reconsideration*, 51 F.R.D. 187, *aff'd without opinion*, 479 F.2d 920 (D.C.Cir. 1973). *Cf. Davidson v. Light*, 79 F.R.D. 137, 139–40 (D.Colo.1978) ("infection control report" containing facts, evaluations and opinions discoverable in medical malpractice action). Other cases in which the "critical self-analysis" doctrine has been applied are cases wherein the plaintiff was seeking employers' equal opportunity goals, policies and affirmative action plans, *Roberts v. National Detroit Corp.*, 87 F.R.D. 30, 32 (E.D.Mich.1980); *McLain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 58 (E.D. Pa.1979); *Dickerson v. U.S. Steel Corp.*,

14 Fair Empl. Prac. Cas. (BNA) 1448, 1449 (E.D.Pa.1976); *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283, 285 (N.D.Ga.1971). *Cf. Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y.1987) (various documents, including those pertaining to development of affirmative action plan, discoverable in employment discrimination action); *Witten v. A.H. Smith & Co.*, 100 F.R.D. 446 (D.Md. 1984) (self-evaluation reports in employment discrimination action discoverable). The doctrine of "critical self-analysis" has been discussed in other types of cases but in most of them the courts determined that the doctrine was inapplicable. *See Peterson v. Chesapeake & Ohio Railway Co.*, 112 F.R.D. 360 (W.D.Mich.1986) (report by railroad employees of train derailment not protected by "critical self-analysis" doctrine in negligence action); *Westmoreland v. CBS, Inc.*, 97 F.R.D. 703 (S.D.N.Y.1983) (investigation report of broadcast of defendant's television documentary in libel action); *Lloyd v. Cessna Aircraft Co.*, 74 F.R.D. 518 (E.D.Tenn.1977) (minutes and reports of meetings concerning review and evaluation of quality of defendant's products in negligence action); *Wright v. Patrolmen's Benevolent Association*, 72 F.R.D. 161, 163–64 (S.D.N.Y.1976) (information received during course of investigation of plaintiff in civil rights action). *See also Robinson v. Magovern*, 83 F.R.D. 79 (W.D.Pa.1979) (hospital peer review communications discoverable in antitrust action based on denial of hospital staff privileges). The parties have not presented the Court with any cases in which the doctrine of "critical self-analysis" has been discussed in a Federal Employers' Liability Act case such as this.

The policies underlying the "critical self-analysis" doctrine are based upon the need to promote candid and forthright self-evaluation. In connection with employment discrimination actions, affirmative action plans have been protected from discovery under the "critical self-analysis" doctrine to assure fairness to persons who have been required by law to engage in self-evaluation to promote the public interest in fair employment practices and to make the self-evaluation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation.

*O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 218 (D.Mass.1980). In connection with malpractice actions, hospital staff meetings discussing the hospital's clinical practices have been protected on the basis of the overwhelming public interest in the continued improvement in the care and treatment of patients, and maintaining the confidentiality of these meetings so the "flow of ideas and advice can continue unimpeded." *Bredice*, 50 F.R.D. at 250–51. It therefore appears that one of the purposes of the doctrine is to prevent a "chilling" effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations.

The Court is well aware that Fed.R. Civ.P. 26(b)(3) protects from discovery documents and tangible things prepared in anticipation of litigation or for trial except upon a showing that the party seeking discovery has substantial need of the materials and that he is unable without undue hardship to obtain the equivalent by other means. Here, the defendant is not claiming that the report was prepared in anticipation of litigation or for trial. Neither is the plaintiff claiming substantial need of the materials and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. It appears, therefore, that the sole issue is whether the defendant may protect from discovery those portions of its Investigation Committee Report captioned "Accident Analysis", "Cause", "Contributing Factors" and "Committee Recommendations" on the basis of the doctrine of "critical self-analysis."

There have been cases in this district where the court has ordered Amtrak to turn over the Investigation Committee Reports. *Curry v. National Railroad Passenger Corp.*, No. 87–1016 (E.D.Pa. May 4, 1987) (Giles, J.) [Available on WESTLAW, DCT database]; *Matthews v. National Railroad Passenger Corp.*, No. 86–7557

(E.D.Pa. May 1, 1987) (Huyett, J.) [Available on WESTLAW, DCT database]; *White v. National Railroad Passenger Corp.,* No. 85–5368 (E.D.Pa. May 21, 1986) (Scirica, J.); *McAllister v. National Railroad Passenger Corp.,* No. 86–0235 (E.D.Pa. May 20, 1986) and *Caputo v. National Railroad Passenger Corp.,* No. 86–0239 (E.D.Pa. May 21, 1986) (Bechtle, J.) [Available on WESTLAW, DCT database]. In *McAllister, Caputo,* and *White,* the reports were ordered turned over on the ground that they were not prepared in anticipation of litigation, but in the ordinary and regular course of business. In *Matthews,* the Court ordered that the report should be turned over on the ground that it was not protected from discovery as evidence of subsequent remedial measures pursuant to Fed.R.Evid. 407. It has been represented to the Court that in none of these cases did the defendant claim that the doctrine of "critical self-analysis" protected certain portions of the Amtrak Investigation Committee Report as the defendant now claims.

There have also been cases in this district wherein the Court has protected from discovery the Investigation Committee Report prepared by Amtrak pursuant to Fed. R.Civ.P. 26(b)(3) on the ground that these reports were prepared in anticipation of litigation or for trial and the plaintiff had shown no substantial need for production of the reports. *See Widdoes v. National Railroad Passenger Corp.,* No. 85–1755 (E.D.Pa. Aug. 14, 1985) (Pollak, J.); *Murray v. National Railroad Passenger Corp.,* No. 85–1679 (E.D.Pa. Sep. 4, 1985) (Newcomer, J.) [Available on WESTLAW, DCT database]; *Lewandowski v. National Railroad Passenger Corp.,* No. 85–2036 (E.D.Pa. Nov. 22, 1985) (Naythons, Mag.) [Available on WESTLAW, DCT database]; *Eoppolo v. National Railroad Passenger Corp.,* 108 F.R.D. 292 (E.D.Pa.1985) (Naythons, Mag.). As heretofore pointed out, the defendant does not in this action claim that the report was prepared in anticipation of litigation or for trial. Nor does the plaintiff claim that he has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the meterials by other means.

■ The Court has determined that the "critical self-analysis" doctrine should be applied to protect those portions of the Amtrak Investigation Committee Report entitled "Accident Analysis" and "Committee Recommendations." "Accident Analysis" and "Committee Recommendations" appear to clearly encompass opinions and recommendations which come within the ambit of the "critical self-analysis" doctrine. Since one of the primary purposes of the doctrine is to prevent a chilling effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations, this Court has determined that the portions of the report entitled "Accident Analysis" and "Committee Recommendations" should be protected from discovery. There is no question that the public has an interest in the institution of practices assuring safer operations of railroads. The production of these portions of the report would tend to hamper honest, candid self-evaluation geared toward the prevention of future accidents.

■ The "critical self-analysis" doctrine should not, however, be applied to those portions of the report entitled "Cause" and "Contributing Factors". These portions should be discoverable. The cause of an accident and factors contributing to an accident are at the heart of every action brought by an employee to recover for his or her injuries. In cases such as these, the plaintiff has the burden of proving that the injury resulted in whole or in part from the negligence of the railroad. Therefore, there is no reason why the information set forth in the "Cause" and "Contributing Factors" portions should not be disclosed to the plaintiff.

### ORDER

AND NOW, this 25th day of June, 1987 upon consideration of the plaintiff's motion to compel production of the portions of Amtrak's Investigation Committee Report

prepared in connection with the plaintiff's accident entitled "Accident Analysis", "Cause", "Contributing Factors" and "Committee Recommendations", for the reasons set forth in the Court's Memorandum of June 25, 1987,

IT IS ORDERED: The plaintiff's motion to compel is GRANTED in connection with the "Cause" and "Contributing Factors" portions of Amtrak's Investigation Committee Report;

IT IS FURTHER ORDERED: The plaintiff's motion to compel is DENIED in connection with the "Accident Analysis" and "Committee Recommendations" of Amtrak's Investigation Committee Report.