**150**

**Kevin T. DOWLING, Plaintiff,**

**v.**

**AMERICAN HAWAII CRUISES, INC., American Hawaii Cruises Joint Venture and American Global Lines, Inc., In Personam and S.S. INDEPENDENCE O.N. 261147, her engines, tackle, stores and equipment In Rem, Defendants.**

**Civ. No. 89–00652 ACK.**

United States District Court,
D. Hawaii.

July 27, 1990.

Lunsford Dole Phillips, Jay Lawrence Friedheim, Honolulu, Hawaii, Curtis Gordon, Gretna, La., Michael J. Keane, Laurie M. Gindin, New York City, for plaintiff.

Alcantara & Frame, Leonard Alcantara, Robert Frame, John O'Kane, Jr., Honolulu, Hawaii, for defendants.

**ORDER AFFIRMING MAGISTRATE'S ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY OF MEETING MINUTES**

KAY, District Judge.

## I. BACKGROUND

Plaintiff Kevin Dowling was First Mate aboard the S.S. Independence, a passenger cruise ship owned and operated by the three Defendants: American Hawaii Cruises, Inc., American Global Lines, Inc., and American Hawaii Cruises Joint Venture. On December 1, 1988, while supervising mooring operations, Plaintiff slipped and fell to the metal deck of the vessel, seriously injuring his back. Plaintiff alleges that his fall was caused by oil on the deck leaking from a defective "roller chock," a piece of deck machinery. Plaintiff further alleges that this roller chock had been leaking intermittently for some fourteen months prior to the accident, and that Defendants through their agents were aware of the defect.

On August 22, 1989, Plaintiff filed suit against Defendants under the Jones Act, 46 U.S.C.App. § 688, claiming negligence and seeking general, special, and punitive damages for his injury. Since then, Plaintiff has been seeking discovery from Defendants concerning his accident. A safety committee comprised of various representatives of the S.S. Independence's crew held monthly meetings to identify potential safety problems aboard ship, and to take steps to correct any identified problems. Pursuant to a request for production of documents, Plaintiff sought the minutes of these monthly safety committee meetings for a period of approximately two years prior to his accident.

Initially, Defendants refused to comply with Plaintiff's request, claiming that the safety committee minutes were protected by the "self-evaluative privilege." However, following a meeting with Plaintiff's attorneys, Defendants provided Plaintiff with heavily redacted versions of the minutes from four committee meetings in 1987. Defendants claimed that these redacted minutes—essentially one brief phrase relating to the leaking roller chock from each of the four meetings—constitute the only items of relevance to Plaintiff's claim. Subsequently, on February 28, 1990, Plaintiff filed a motion to compel Defendants to answer interrogatories, which both the Magistrate and the parties have treated as a motion to compel production of the complete safety committee minutes.

On March 29, 1990, Magistrate Tokairin held a hearing on Plaintiff's motion, and subsequently reviewed *in camera* the safety committee minutes. On May 4, 1990, the Magistrate issued an *Order Denying Plaintiff's Motion To Compel S.S. Independence Minutes Of Safety Meetings.* The Magistrate stated that a privilege of critical self-analysis was applicable to shield the safety minutes from discovery. Plaintiff now appeals from that order.

## II. JURISDICTION

Because this matter has arisen under a claim filed pursuant to 46 U.S.C.App. § 688 and 28 U.S.C. § 1333, which vests exclusive jurisdiction for general maritime and admiralty claims in the federal district courts, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

"A United States District Judge shall consider the appeal and shall set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Rules of the United States District Court for the District of Hawaii, Rule 404–1.

## IV. DISCUSSION

A. *Self-critical analysis privilege— Historical Background*

The privilege of self-critical analysis under which the Magistrate shielded the safety committee minutes from discovery is a recent development. The privilege was first recognized in *Bredice v. Doctors Hospital Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973). In *Bredice,* the court held that the minutes of hospital staff meetings were properly shielded from discovery by the plaintiff in a malpractice suit against the hospital. The hospital conducted these staff meetings in order to evaluate its procedures and improve patient care. The *Bredice* court noted that these meetings required hospital staff members to give their candid assessments of various hospital procedures, including shortcomings in the clinical work of its members. *Id.* at 250. The court also noted that the hospital staff held its discussions with the understanding that they would remain confidential, and that "[t]o subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations." *Id.*

The *Bredice* court concluded:

There is an overwhelming public interest in having those staff meetings held on a confidential basis so that the flow of ideas and advice can continue unimpeded.... These committee meetings, being retrospective with the purpose of self-improvement, are entitled to a qualified privilege on the basis of the overwhelming public interest.

*Id.* at 251.

Since *Bredice,* there have been a few similar cases involving hospital reports where the court has ruled that the report be shielded from discovery. *See Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y. 1971) (report of hospital inquiry into a patient suicide protected from discovery). But most of the cases in which a court has recognized the self-critical analysis privilege have involved Title VII of the 1964 Civil Rights Act. In these cases, plaintiffs were seeking discovery of reports, mandated by either the federal or a state government, detailing an employer's equal opportunity policies and affirmative action plans.

*See Banks v. Lockheed–Georgia Co.*, 53 F.R.D. 283 (N.D.Ga.1971). The courts in these Title VII cases involving mandatory employer reports have held that allowing plaintiffs to discover such reports would discourage employers from making candid evaluations of their equal-employment policies and undercut the public's interest in fair employment practices. *See McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53 (E.D.Pa. 1979). The rationale for applying the privilege in these Title VII cases is thus similar to that stated by the *Bredice* court: the public's interest outweighs the needs of the individual plaintiff.

In Title VII cases involving affirmative action plans not mandated by the government, however, the self-critical analysis privilege has usually not been applied. In *Hardy v. New York News, Inc.*, 114 F.R.D. 633 (S.D.N.Y.1987), the court refused to shield documents voluntarily drafted by the employer from discovery by plaintiffs. The court observed that "in the area of employment discrimination virtually every court has limited the privilege to information or reports that are mandated by statute or regulation." *Id.* at 641. The court further noted:

> Those courts that have recognized a privilege for self-critical analysis have nonetheless held that the privilege is qualified and that its application is subject to a balancing of the general policy interests against the interests of the individual plaintiff.

*Id.*

The *Hardy* court held that the plaintiffs' interest in gathering information necessary to prove their case outweighed any public interest in fostering candid self-analysis on the part of the employer, especially where the documents in question were not mandated by the government. *Id.*

In *Webb v. Westinghouse Electric Corporation*, 81 F.R.D. 431 (E.D.Pa.1978), the court also refused to shield from discovery certain employer-drafted documents relating to the corporation's employment policies and affirmative action programs. In the course of its analysis, the court stated:

In reviewing all of the cases, several factors emerge as potential guideposts for the application of the "self-critical analysis" defense. First, materials protected have generally been those prepared for mandatory governmental reports. Second, only subjective, evaluative materials have been protected; objective data contained in those same reports in no case have been protected. Finally, courts have been sensitive to the need of the plaintiffs for such materials, and have denied discovery only where the policy favoring exclusion of the materials clearly outweighed plaintiff's need. *Id.* at 434.

Thus, even in those Title VII cases where defendant has an arguable claim on the protection of the self-critical analysis privilege, the courts have balanced that claim and the public interest involved against the need of the individual plaintiff.

*Granger v. National Railroad Passenger Corporation*, 116 F.R.D. 507 (E.D.Pa. 1987) is a recent non-Title VII case somewhat analogous to the case at bar. In *Granger*, a railroad employee filed suit against the employer-railroad (Amtrak) under the Federal Employers' Liability Act for injuries suffered in an on-the-job accident. It is Amtrak policy to investigate any accident involving its employees and to prepare an Amtrak Investigation Committee Report. *Id.* at 508. The plaintiff in *Granger* moved to compel production of the committee report on his accident. *Id.*

Amtrak produced a redacted version of the report, deleting from the report those sections with the captions "Accident Analysis," "Cause," "Contributing Factors," and "Committee Recommendations." *Id.* Amtrak claimed that these sections were protected by the self-critical analysis privilege. *Id.* Moreover, Amtrak argued that because the report was prepared for the purpose of improving railroad safety, there was "an overwhelming public interest" in having its results and conclusions shielded from discovery. *Id.*

In its analysis of the plaintiff's motion to compel and defendant Amtrak's claim of privilege, the *Granger* court began by sur-

veying the two kinds of cases where the privilege has most often been allowed—hospital evaluations of its clinical practice, and Title VII/Title VII-type discrimination cases. *Id.* at 508–09. The court then noted that "[t]he doctrine of 'critical self-analysis' has been discussed in other types of cases but in most of them the courts determined that the doctrine was inapplicable." *Id.* at 509.

The *Granger* court then held that those sections of the Amtrak report captioned by "Accident Analysis" and "Committee Recommendations" be protected from discovery. The court stated that because these sections of the report "clearly encompass opinions and recommendations," making them available to plaintiff "would tend to hamper honest, candid self-evaluation geared toward the prevention of future accidents." *Id.* at 510. The court also ruled, however, that those sections of the report entitled "Cause" and "Contributing Factors" were discoverable.

The court stated:

The cause of an accident and factors contributing to an accident are at the heart of every action brought by an employee to recover for his or her injuries. In cases such as these, the plaintiff has the burden of proving that the injury resulted in whole or in part from the negligence of the railroad. Therefore, there is no reason why the information set forth in the "Cause" and "Contributing Factors" portions should not be disclosed to the plaintiff.

*Id.*

Regarding the "Cause" and "Contributing Factors" sections of the report, the *Granger* court found that the needs of the plaintiff outweighed Amtrak's public interest claim to the self-critical analysis privilege because the information at issue involved the basic factual elements of plaintiff's negligence case. *Id.*

### B. *Application to the instant case*

As the above brief survey of relevant cases since *Bredice* shows, the law regarding this emerging self-critical analysis privilege remains unsettled. Courts which have ruled on the privilege have suggested various criteria for determining when the privilege should apply. As previously noted, the court in *Webb v. Westinghouse Electric Corporation* for instance suggested that subjective, evaluative material may be protected, while objective, factual data should be disclosed. 81 F.R.D. at 434. Similarly, the *Granger* court protected those sections of the Amtrak report concerning opinions and recommendations, but refused to protect the purportedly more factual data contained in those sections concerning the accident's cause.

However, the essential test which a court ruling on the self-critical analysis privilege has had to apply since *Bredice* involves balancing the public interest protected by the privilege against the plaintiff's need for the material to make his case. Although the *Bredice* court spoke of plaintiff's having to show "exceptional necessity," most later courts have compelled discovery if plaintiff demonstrated that his need for the material merely outweighs defendant's public-interest claim. Indeed, one court has recently criticized the *Bredice* "exceptional necessity" requirement. *See Wei v. Bodner,* 127 F.R.D. 91 (D.N.J.1989).

In *Wei,* the court stated that "[a]t the very least the *Bredice* requirement that exceptional necessity must be shown to overcome the privilege goes too far. Such a requirement is too expansive and in derogation of the Supreme Court's express opinion that privileges should be narrowly construed." *Id.* at 100–101. The *Wei* court therefore advocated a simple balancing test between the respective needs of defendant and plaintiff in a given case. *Id.* at 101.

In the case at bar, Defendants claim that disclosure of the safety committee minutes would have a chilling effect on the critical analysis conducted by the safety committee. Thus, Defendants assert that the public's interest in safety for both passengers and crew on board Defendants' cruise ships would be undercut by making the committee minutes available to Plaintiff. Response to Plaintiff's Appeal at 3–4.

Defendants have already provided Plaintiff with excerpts from the safety meeting minutes dealing with the leaking roller chock. Defendants assert that these excerpts constitute the only references to the roller chock contained in the meeting minutes. Although the law regarding the self-critical analysis privilege remains emergent and unsettled, it is clear that in order to overcome Defendants' claim on the privilege in the instant case, Plaintiff must at least demonstrate that his need for the complete safety committee meeting minutes outweighs Defendants' public-interest claim.

Before issuing his order to deny Plaintiff's motion, the Magistrate inspected *in camera* the meeting minutes in question. This Court has also conducted an *in camera* inspection of these meeting minutes. This Court finds that Defendants have in fact already voluntarily disclosed to Plaintiff all information regarding the defective roller chock contained in the S.S. Independence safety committee meeting minutes. Plaintiff has failed to demonstrate that his need for the remainder of the safety committee meeting minutes, which in fact do not involve the subject roller chock, outweighs Defendants' public-interest claim on the self-critical analysis privilege.

## V. *ORDER*

Accordingly, it is hereby ORDERED that the Magistrate's order to deny Plaintiff's motion to compel production of the S.S. Independence safety committee meeting minutes is AFFIRMED.