**Brian D. MORGAN, Plaintiff,**

**v.**

**UNION PACIFIC RAILROAD COMPANY, as successor to Southern Pacific Lines; and Southern Pacific Lines; also d/b/a Southern Pacific Transportation Company, Defendants.**

No. 96 C 6977.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 2, 1998.

Motion to Reconsider Granted Oct. 14, 1998.

---

Patrick W. Walsh, Patrick W. Walsh, P.C., Chicago, IL, for plaintiff.

Weston W. Marsh, Richard Thomas Sikes, Jr., Anthony Joseph Carballo, David C Hurst, Freeborn & Peters, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Brian D. Morgan ("Morgan") brings this action against defendant Union Pacific Railroad Co. ("Union Pacific") under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51–60, for injuries he suffered while performing his duties as a railway police officer. After the incident, the railroad conducted an internal investigation that generated two reports intended to examine the facts surrounding the incident, identify its possible causes, and suggest recommendations to prevent recurrences. Union Pacific disclosed the existence of these two reports in its discovery responses, but refuses to turn over the reports to Morgan. Union Pacific claims that the reports are not discoverable because they are protected by the "self-critical analysis" privilege.

Morgan filed a motion to compel Union Pacific to produce the reports and this court referred the motion to Magistrate Judge Pallmeyer. On June 16, 1998, Magistrate Judge Pallmeyer issued an order finding that the self-critical analysis privilege did not protect the reports from discovery and granting Morgan's motion to compel.[1] Union Pacific

---

1. When they were before Magistrate Judge Pallmeyer, the parties also disputed whether section 60 of FELA, 45 U.S.C. § 60, required Union Pacific to produce the reports. Magistrate Judge Pallmeyer concluded that section 60 did not require Union Pacific to produce the documents; Morgan, however, did not object to this ruling.

filed objections with this court, claiming that Magistrate Judge Pallmeyer erred by basing her ruling on an incorrect legal standard. Specifically, Union Pacific argues that Magistrate Judge Pallmeyer erroneously applied the self-critical analysis standard used in employment discrimination cases rather than the standard applicable to FELA and other personal injury cases. Although the court finds that Magistrate Judge Pallmeyer applied the wrong legal standard, the court agrees with Magistrate Judge Pallmeyer's conclusion that Union Pacific must disclose the reports. The court therefore affirms Magistrate Judge Pallmeyer's order and overrules Union Pacific's objections.

### Analysis

■ Because this dispute centers around a discovery request, the court must begin its analysis with Rule 26(b)(1) of the Federal Rules of Civil Procedure which provides in relevant part:

> [p]arties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). Rule 501 of the Federal Rules of Evidence governs whether information is "privileged" for purposes of Rule 26(b)(1). *See Price v. County of San Diego*, 165 F.R.D. 614, 617–18 (S.D.Cal.1996). Federal Rule of Evidence 501 states that:

> [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

This court therefore expresses no opinion on the

Fed.R.Evid. 501. "Under this rule, in federal question cases the federal common law of privileges applies." *William T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir.1982). On the other hand, if the case is before the court on diversity jurisdiction, the court must apply state privilege law. *Id.* Because this case is based on FELA, the court will apply the federal common law of privilege.

■ The Federal Rules of Civil Procedure establish a broad policy which favors full disclosure of facts during discovery. *Wei v. Bodner*, 127 F.R.D. 91, 95–96 (D.N.J.1989). The law therefore disfavors privileges because privileges interfere with the fundamental goals of the judicial process-namely, revealing the truth about a specific incident and, when appropriate, providing a remedy to a party that has been unnecessarily harmed. *See Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The Supreme Court has been hesitant to expand common law privileges. Privileges hinder the fundamental principle that " 'the public ... has a right to every man's evidence.' " *Trammel*, 445 U.S. at 50, 100 S.Ct. 906, (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)); *see also Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 1928, 135 L.Ed.2d 337 (1996). Privileges must be strictly construed and tolerated " 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " *Trammel*, 445 U.S. at 50, 100 S.Ct. 906 (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)).

As noted, Union Pacific contends that the so-called "self-critical analysis" privilege protects the post-accident reports at issue in this case from disclosure. However, before determining whether the privilege of self-criti-

section 60 issue.

cal analysis prohibits discovery of these reports, the court must first determine whether federal common law recognizes this privilege.

Given the vast array of inconsistent decisions on this issue, it would be understatement to say that it is unclear whether a federal self-critical analysis privilege exists. Many courts that have applied the privilege do so only preceded by the caveat, "[e]ven if such a privilege exists...." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 & n. 1 (9th Cir.1992); *see also Price v. County of San Diego*, 165 F.R.D. 614, 618–19 (S.D.Cal.1996); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 373 (N.D.Ill.1982). At least one court has boldly declared the self-critical analysis privilege a dead letter under federal common law. *See Spencer Savings Bank v. Excell Mortgage Corp.*, 960 F.Supp. 835, 843–44 (D.N.J.1997).[2] The Seventh Circuit has yet to squarely address the issue of whether the privilege of self-critical analysis exists and, if so, to define the contours of the privilege. In this absence of binding authority, and recognizing that most courts afford some level of recognition to the privilege, this court presumes for purposes of this case that federal common law does recognize the privilege of self-critical analysis.

Having assumed the viability of the self-critical analysis privilege, the court must now determine the appropriate parameters of the privilege. Courts that have considered the privilege of self-critical analysis have done so in a variety of contexts. *See, e.g., Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir.1992) (injured employee brought suit under the Jones Act); *In re Air Crash at Charlotte, N.C. on July 2, 1994*, 982 F.Supp. 1052 (D.S.C.1995) (consolidated aviation negligence lawsuit); *In re Grand Jury Proceedings*, 861 F.Supp. 386 (D.Md.1994) (grand jury investigation); *In re Crazy Eddie Sec. Litig.*, 792 F.Supp. 197 (E.D.N.Y. 1992) (securities litigation); *Granger v. National R.R. Passenger Corp.*, 116 F.R.D. 507 (E.D.Pa.1987) (injured employee brought suit under FELA); *Roberts v. Carrier Corp.*, 107 F.R.D. 678 (N.D.Ind.1985) (products liability); *Resnick v. American Dental Assoc.*, 95

F.R.D. 372 (N.D.Ill.1982) (employment discrimination); *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249 (D.D.C.1970) (medical malpractice action).

Although courts have considered the privilege in many different settings, the courts have not agreed on a uniform set of criteria that trigger the privilege's protection. The courts do, however, agree that the fundamental purpose of the privilege is to "protect from disclosure documents containing candid and potentially damaging self-criticism." Donald P. Vandegrift, Jr., *The Privilege of Self–Critical Analysis: A Survey of the Law*, 60 Albany L.Rev. 171, 175–76 (1996). The privilege is grounded on the premise that "disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law." *Sheppard v. Consolidated Edison Co.*, 893 F.Supp. 6, 7 (E.D.N.Y.1995). Thus, courts generally acknowledge that determining whether the privilege applies requires the court to balance the public interest in protecting candid corporate self-assessments against the private interest of the litigant in obtaining all relevant documents through discovery. *See Tharp v. Sivyer Steel Corp.*, 149 F.R.D. 177, 182 (S.D.Iowa 1993). This general balancing test has, however, assumed several different formulations as courts struggle with the applicability of the self-critical analysis privilege.

When determining whether the self-critical analysis privilege applies to the reports in this case, Magistrate Judge Pallmeyer followed the approach utilized in *Resnick v. American Dental Association*, 95 F.R.D. 372 (N.D.Ill.1982). Under *Resnick*, the self-critical analysis privilege applies when the party asserting the privilege establishes that (1) the materials were prepared for mandatory government reports; (2) the privilege is being asserted only to protect subjective, evaluative materials; (3) the privilege is not being asserted to protect objective data in the same reports; and (4) the policy favoring exclusion clearly outweighs the plaintiff's need for the information. *Id.* at 374. Magistrate Judge

---

**2.** The court's research reveals that, to date, no other court has adopted the reasoning and con-clusion of the *Spencer Savings* court, or even cited the case.

Pallmeyer concluded that the privilege did not attach in this case because Union Pacific failed to establish that the documents were prepared for mandatory government reports.

Union Pacific claims that by applying the standard set forth in *Resnick*, Magistrate Judge Pallmeyer applied the wrong legal standard. According to Union Pacific, the *Resnick* standard applies only to employment discrimination cases. Union Pacific contends that, unlike employment discrimination cases, the self-critical analysis privilege applicable to personal injury cases does not require the party asserting the privilege to establish that the report was prepared in response to a governmental mandate. Union Pacific argues that because the rationale behind the privilege of self-critical analysis is different for tort cases than for employment discrimination cases, the court should not require Union Pacific to establish that it prepared the reports under government mandate.

To resolve whether the self-critical analysis privilege requires the party asserting the privilege to have responded to a governmental mandate, the court must trace the privilege to its origins. The self-critical analysis privilege was initially developed to promote public safety by encouraging businesses to voluntarily evaluate their safety procedures. *See Bredice v. Doctors Hosp. Inc.*, 50 F.R.D. 249, 251 (D.D.C.1970) (finding that privilege applied to hospital committee meeting minutes in which members were asked for frank analysis were not discoverable). Intended to encourage noncompulsory self-analysis and self-criticism, courts employed the privilege to protect certain documents from discovery in cases where public policy outweighs a litigant's need for such information. 4 *Moore's Federal Practice* ¶ 26.60[3]. Because production of such documents "would tend to hamper honest, candid self-evaluation geared toward the prevention of future accidents," the doctrine evolved in order "to prevent a 'chilling' effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations." *Granger v. National R.R. Passenger Corp.*, 116 F.R.D. 507, 508–509 (E.D.Pa.1987).

Since its inception in the tort context, courts have extended the privilege to protect business entities which are legally mandated to critically evaluate their hiring and personnel polices. The justification for asserting the privilege in discrimination cases is to protect those businesses that are *required* to engage in critical self-evaluation from exposure to liability resulting from their mandatory investigations. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 303 (N.D.Ill. 1993). Courts have employed the privilege in such cases "to assure fairness to persons who have been required by law to engage in self-evaluation ... and to make the self-evaluation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation." *Resnick*, 95 F.R.D. 372, 374–75 (N.D.Ill.1982) (citing *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 218 (D.Mass.1980)). These courts reason that if an employer is not required to critically evaluate its employment decisions, it is not unfair to require the entity to produce documents detailing the results of such analysis. Thus, courts have almost uniformly held that, for purposes of discrimination cases, the privilege only protects materials prepared pursuant to governmental mandate.

Some courts in this circuit have applied the standards developed in employment discrimination cases to product liability cases. *See Culinary Foods*, 151 F.R.D. at 304; *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 684 (N.D.Ind.1985). Union Pacific, however, maintains that two different legal standards should be employed because the rationale behind the privilege is different for tort cases than it is for discrimination cases.

The court agrees with Union Pacific that the test for determining whether the self-critical analysis privilege applies in an employment discrimination case should be different from the criteria used in a tort case. The rationale for the self-critical analysis privilege in employment discrimination cases is to assure fairness to entities who are legally required to engage in self-evaluation. In contrast, the justification for the privilege in tort cases is to promote public safety through voluntary and honest self-analysis. Consequently, in personal injury cases such as this

one, whether a particular document was prepared pursuant to a governmental mandate is unrelated to the policy goals that the self-critical analysis privilege seeks to achieve in tort cases.

■ Because the purpose of applying the self-critical analysis privilege in tort cases differs from the policy goals of applying the privilege in employment discrimination cases, the court concludes that the test employed in *Resnick* is not applicable to this personal injury case. There is a fundamental difference between tort cases, which involve voluntary self-evaluations designed to enhance safety, and discrimination cases, which involve the fairness of disclosing documents written pursuant to a legal mandate. As a practical matter, railroads such as Union Pacific are not required by law to critically evaluate their safety policies. However, the public does have a substantial interest in encouraging such entities to engage in candid and critical self-evaluation for the purposes of promoting safety. Uniformly requiring that all documents be prepared for mandatory government reports would frustrate the underlying goals of the self-critical analysis privilege in tort cases. It is therefore necessary to have separate legal standards to accommodate the fact that the motivation for applying the self-critical analysis privilege is different in personal injury cases than it is in employment discrimination cases.

■ Having determined that Magistrate Judge Pallmeyer applied the wrong legal standard when determining whether the self-critical analysis privilege applies in this case, the court must now decide what criteria may trigger the privilege in this tort case. For purposes of this action, the court adopts the reasoning articulated in *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir.1992). *See also Granger*, 116 F.R.D. 507, 508–09. Like this case, *Dowling* involved an employee who was injured on the job and who sued his employer for damages

under a federal statute. According to *Dowling*, the self-critical analysis privilege may only attach if the party asserting the privilege shows: (1) the information sought resulted from a critical self-analysis undertaken by the party seeking protection; (2) the public has a strong interest in preserving the free flow of the type of information sought; (3) the information is of the type whose flow would be curtailed if discovery were allowed; and (4) the document was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential. *Dowling*, 971 F.2d at 426.

■ Employing the test articulated in *Dowling*, the court finds that Union Pacific has failed to carry its burden of showing that the self-critical analysis privilege should apply in this case. Specifically, Union Pacific has completely failed to demonstrate that it generated the reports with the expectation that the reports would be kept confidential and were in fact kept confidential. Like every other privilege, confidentiality is an essential element of the self-critical analysis privilege. *See Dowling*, 971 F.2d at 426. Nevertheless, Union Pacific completely fails to address this element of the privilege. Moreover, even though Morgan specifically objected to the privilege on the grounds that Union Pacific could not show that the disputed reports were confidential, (*see* Morgan's Mem. of Law in Supp. of Mot. to Compel Disclosure at 4), Union Pacific has never asserted that the reports were confidential. Without a sufficient showing that Union Pacific intended the reports to be confidential and did in fact preserve their confidentiality, the court will not afford them the privilege of self-critical analysis.[3] *See In re Air Crash Near Cali, Colombia on December 20, 1995*, 959 F.Supp. 1529, 1533 (S.D.Fla.1997) (refusing to apply privilege because party failed to establish confidentiality requirement).

■ Moreover, as Magistrate Judge Pallmeyer pointed out, the liberal rules of discov-

---

**3.** Even if Union Pacific could show that the reports were intended to be confidential and were, in fact, kept confidential, much of the reports' content would have to be disclosed. Courts that enforce the self-critical analysis privilege only protect subjective opinions or impressions rather than objective facts. *See, e.g., Granger*, 116 F.R.D. at 510. Thus, Union Pacific would have to disclose all factual information contained in the reports, including those facts related to the cause or circumstances of Morgan's accident.

ery mandate that Morgan have access to these reports. Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party may obtain discovery regarding any matter relevant to the subject matter of the action. Rule 26(b)(1) provides that "[t]he information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." A report detailing the facts and possible contributing causes of Morgan's accident certainly clears this threshold. The cause of an accident and the factors contributing to that accident are at the heart of every personal injury action brought by an employee to recover for his or her workplace injuries. In this case, Morgan has the burden of proving that his injuries resulted in whole or in part from Union Pacific's negligence. The railroad's interest in protecting these reports from discovery does not clearly outweigh Morgan's need for these documents in order to prepare his case. Under these broad discovery standards and the test articulated in *Dowling*, there is no reason why these documents should not be disclosed to Morgan.

### Conclusion

For the foregoing reasons, the court affirms Magistrate Judge Pallmeyer's decision to grant Morgan's Motion to Compel and overrules Union Pacific's objections. The parties should discuss settlement before the next court date.